In re The PATERNITY OF Brennan McGUIRE–BYERS, A Child Born Out of Wedlock,

Raymond S. Byers, Appellant–Respondent,

v.

Brennan McGuire–Byers, A Child Born Out of Wedlock, Mary S. McGuire, (Mother), Appellees–Petitioners.

No. 71A03–0803–JV–132.

Court of Appeals of Indiana.

Aug. 21, 2008.

Aric J. Rutkowski, Zappia Zappia & Stipp, South Bend, IN, Attorney for Appellant.

Robert J. Palmer, May Oberfell Lorber, South Bend, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Raymond Byers appeals the trial court's award of retroactive child support and attorney fees for his adult son Brennan McGuire–Byers. We affirm in part, reverse in part, and remand.

### Issues

Raymond raises three issues, which we consolidate and restate as:

I. whether the trial court properly ordered him to pay retroactive child support; and

II. whether the trial court properly awarded attorney fees.

Brennan and his mother, Mary McGuire, (collectively "the Appellees") request appellate attorney fees and cross-appeal the trial court's order requiring Raymond to make the child support payments directly to Brennan.

### Facts

The facts most favorable to the judgment show that on June 13, 1987, Brennan was born. At the time Mary and Raymond were living together in Illinois. Raymond acknowledged that he was Brennan's father. Although Raymond moved to Colorado in November of 1987, he and Mary continued their relationship. Raymond returned to Illinois for Brennan's first birthday. Soon thereafter, the couple's relationship deteriorated. In May of 1989, Raymond moved from Colorado to Indiana. Mary hired an attorney and tried to contact Raymond regarding paternity proceedings. Raymond could not be found, and Mary did not establish paternity. Raymond's parents refused to disclose his location to Mary. Raymond discontin-

ued contact with Brennan except for an occasional card post-marked from Raymond's parents' address or a bank-issued check from Ohio. In 2005, Brennan, while still in high school, tracked down Raymond and lived with him and his family until early 2006. Brennan finished high school and at some point began living on his own and attending college.

On April 26, 2006, Brennan initiated a paternity proceeding against Raymond. Brennan also moved to include Mary, as his next best friend, as a petitioner. The trial court granted Brennan's motion to include Mary as a petitioner, and Raymond was determined to be Brennan's father.

On August 15, 2007, after a hearing, the trial court ordered child support in the amount of $161.00 per week. The child support order was retroactive from the date of Brennan's birth, and an arrearage of $118,560.00 was entered. Raymond was ordered to pay $75.00 per week toward the arrearage. The trial court also ordered Raymond to pay one-third of Brennan's college expenses. Brennan's child support payments were scheduled to terminate on June 13, 2008, at which point Raymond would be required to pay $150.00 per week toward the arrearage. In its order, the trial court supported its decision to impose retroactive child support by finding:

3. The Court determines that Father was aware of the child's birth on June 13, 1987, that he held himself out as the child's father for a period of time, and then purposefully disappeared and made himself impossible for mother to locate. Indiana common law and public policy demands that parents be responsible for the financial support of their children. Mother has born the entire burden of that support. Father sent cards signed, "Love, Dad;" illustrating his knowledge of paternity. Father also sent the cor-

respondences from his parents' address. When mother contacted father's parents in an attempt to locate father, father's parents told mother they did not know father's whereabouts. The Court did not find Father's testimony that he could not recall where he lived and when he lived in various paces [sic] credible....

Appellant's App. p. 10.

On September 7, 2007, Mary filed a motion to correct error and requested attorney fees.[1] On September 12, 2007, Raymond filed a motion to correct error. On October 31, 2007, following a hearing, the trial court modified the amount of the arrearage to $125,008.00, and awarded attorney fees to the attorney who represented the Appellees. On November 28, 2007, Mary filed a rule to show cause, and Raymond filed another motion to correct error. In its February 19, 2008 order on the motion to correct error, the trial court clarified that Raymond was required to pay attorney fees based on the attorney's representation of the Appellees. That same day, the trial court addressed Mary's rule to show cause and noted that the motion was amended to substitute Brennan for Mary, that all other pleadings shall be made in Brennan's name, and that Raymond shall make all checks payable to Brennan. Both parties now appeal.

## Analysis

### I. Retroactivity

■ Raymond argues that the retroactive child support order is improper because the paternity action was brought by Brennan, an adult, in his own name. To address Raymond's retroactivity claim, we first determine who may file a paternity petition and who the proper parties to the litigation are.

■ A parent may file a paternity action within two years after the child is born unless one of the limited exceptions applies. Ind.Code § 31–14–5–3(b). A parent or other appropriate person may also file a petition as the child's next friend if the child is under eighteen. I.C. § 31–14–5–2(a). Because Brennan was over eighteen when the paternity petition was filed, Mary was not permitted to file such an action. *Cf., In re Paternity of K.L.O.*, 816 N.E.2d 906, 908 (Ind.Ct.App.2004) (analyzing paternity statutes and holding that the statute of limitations did not bar mother as next friend from filing a paternity action on her ten-year-old daughter's behalf). However, "[a] child may file a paternity petition at any time before he or she reaches twenty." I.C. § 31–14–5–2(b). Thus, Brennan properly filed the paternity petition in his individual capacity.

■ Although Mary was not statutorily permitted to file the petition either directly or as Brennan's next friend, she was a necessary party to the action. Indiana Code Section 31–14–5–6 provides, "The child, the child's mother, and each person alleged to be the father are necessary parties to each action." "A 'necessary party' is one who must be joined in the action for a just adjudication." *J.E. v. N.W.S. by S.L.S.*, 582 N.E.2d 829, 832 (Ind.Ct.App. 1991), *trans. denied.* Mary should have been included as a party to the action.

Regarding the order of support, a trial court may order either or both parents to pay reasonable child support after considering all relevant factors, including the financial resources of the custodial parent, the standard of living the child would have enjoyed had the parents been married and remained married to each other, the physical and mental condition of the child, the

---

1. We can only glean the contents of these motions from the transcripts of the hearings and the trial court's orders because neither party included them in the appendices.

child's educational needs, and the financial resources and needs of the noncustodial parent. I.C. § 31–14–11–2(a). "The support order: (1) may include the period dating from the birth of the child; and (2) must include the period dating from the filing of the paternity action." I.C. § 31–14–11–5. Unless the child is emancipated or incapacitated, the duty to support a child under this article ceases when the child turns twenty-one. I.C. § 31–14–11–19. Thus, the trial court properly ordered the payment of child support from the April 26, 2006 filing of the petition until Brennan turns twenty-one or is otherwise emancipated. The issue, here, is whether the trial court properly awarded retroactive child support from the date of Brennan's birth.

Raymond asserts that because this case involves a retroactive child support order in an action brought by an adult child, an issue of first impression, we must look to other jurisdictions for guidance in addressing this issue. We disagree. We believe the appropriateness of a retroactive child support order for an adult child is not based on whether mother or the child filed the petition but whether the interests of everyone, including the child, are adjudicated. *In re Paternity of H.J.F.*, 634 N.E.2d 551, 553 (Ind.Ct.App.1994) ("Our law recognizes that in a paternity action, the child's interests are not necessarily the same as the interests of the parents or of the State. . . . The protection of those interests demands the joining of the child as a necessary party."), *rev'd in part on other grounds by K.S. v. R.S.*, 669 N.E.2d 399, 405 (Ind.1996) (holding that failure to name a child as a party in a paternity action does not necessarily render the judgment or agreement void, but instead

voidable). Because Indiana law adequately addresses the issue of retroactive child support, it is unnecessary to look to other jurisdictions to determine whether the retroactive child support order was proper.

■ Generally, "the trial court is not *required* to award retroactive child support from a date prior to the filing of the paternity action. Rather, such an award is discretionary." *C.A.M. ex rel. Robles v. Miner*, 835 N.E.2d 602, 606 (Ind.Ct.App. 2005); *see also* I.C. § 31–14–11–5. Raymond does not dispute this standard of review or the amount of the weekly child support award [2] but argues that such payments should not be retroactive. He claims the trial court did not look at the financial resources of the non-custodial parent and the hardship the arrearage will place on Raymond's four other young children as required by Indiana Code Section 31–14–11–2(a)(5).

This argument is not supported by citation to evidence in the record and our review of the record shows only that Raymond has four other children. In the absence of evidence showing Raymond has limited financial resources as it related to his four other children, we are not persuaded by this argument.

More importantly, in its order of retroactive child support, the trial court found:

3. The Court determines that Father was aware of the child's birth on June 13, 1987, that he held himself out as the child's father for a period of time, and then purposefully disappeared and made himself impossible for mother to locate. Indiana common law and public policy demands that parents be responsible for the financial support of their children.

---

2. In his brief, Raymond states, "The father does not dispute the weekly amount of child support entered, as such a finding was made pursuant to the Indiana Child Support Guide-

lines." Appellant's Br. p. 15. Raymond also does not challenge the specific amount of the arrearage or the amount of the credit the trial court awarded to him.

Mother has born the entire burden of that support. Father sent cards signed, "Love, Dad;" illustrating his knowledge of paternity. Father also sent the correspondences from his parents' address. When mother contacted father's parents in an attempt to locate father, father's parents told mother they did not know father's whereabouts. The Court did not find Father's testimony that he could not recall where he lived and when he lived in various paces [sic] credible. Appellant's App. p. 10. The trial court's finding regarding Raymond's actions and credibility is unequivocal. Given that Raymond was aware that he was Brennan's father from the time of his birth and knowingly avoided his responsibility to support him, it was within the trial court's discretion to order retroactive child support. Raymond has not established that the trial court abused its discretion.

■ Raymond also appears to argue that retroactive child support is not appropriate because neither Mary nor Brennan is a proper payee. He first claims that Brennan "provided no information on any contributions he made toward his own support since his birth." Appellant's Br. p. 15. He also claims that the paternity statutes "do not contemplate who should be the recipient of a retroactive child support order" and that Mary's claim was barred by the applicable statute of limitations. *Id.* at 14.

In a similar vein, on cross-appeal, the Appellees argue the trial court erred in ordering that the child support payments be paid directly to Brennan. In reviewing the paternity statutes, we conclude that in this case, Mary is the proper recipient of the retroactive child support payments at least until Brennan moved out of her house in 2005. "The court may order that support payments be made to *any appropriate person.*" I.C. § 31–14–11–9 (emphasis

added). As Raymond concedes and the trial court found, Mary bore the entire burden of supporting Brennan. *See* Appellant's Reply Br. p. 7. The fact that Mary was no longer statutorily permitted to file a paternity petition does not in and of itself mean that she is not entitled to the retroactive child support payments resulting therefrom. As the person who supported Brennan from the time of his birth, she logically and legally is the proper recipient of the retroactive child support payments. *See Bright's Adm'r v. Sexton,* 18 Ind. 186, 187–88 (1862) ("The money recovered in a [paternity] prosecution is intended for the maintenance of the child; and the person who has the legal custody of, and who maintains the child, is entitled to it. The mother in this case having had the custody of, and having maintained the child, was entitled to the money, although the child was supported by her own means or industry, aided by what labor the child could perform.").

In sum, we conclude that the trial court did not abuse its discretion in ordering Raymond to make retroactive child support payments. Because Mary supported Brennan at least until 2005, she should receive those payments. It is unclear, however, whether Mary continued to support Brennan after he moved in with Raymond in 2005. It is also unclear whether Mary or Brennan is entitled to the child support payments accruing after the date of the paternity petition—that is whether Mary continues to support Brennan. Accordingly, we remand for the trial court to determine whether Mary is entitled to payments for the time that Brennan was living with Raymond and whether Mary or Brennan is the proper recipient of the prospective child support payments.

## II. Attorney Fees

■ In post-hearing proceedings, the trial court repeatedly ordered Ray-

mond to pay a portion of the attorney fees incurred by the Appellees to establish paternity. For example, in the February 19, 2008 order on Raymond's motion to correct error, the trial court stated, "The Court determined that an award of attorney fees in the amount of $7,000.00 shall be paid by father to Atty. Walton based upon his representation of both mother and Brennan McGuire–Byers." Appellant's App. p. 18. "When making an award of attorney's fees, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors that bear on the reasonableness of the award." *A.G.R. ex rel. Conflenti v. Huff*, 815 N.E.2d 120, 127 (Ind.Ct.App.2004), *trans. denied.* "Any misconduct on the part of one party which causes the other party to directly incur additional fees may be taken into consideration." *Id.* "When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper." *Id.* at 127–28. We review an attorney fee award for an abuse of discretion. *In re Paternity of A.J.R.*, 702 N.E.2d 355, 364 (Ind.Ct.App. 1998).

Raymond first argues that the trial court improperly awarded attorney fees to Mary because she was a "non-party." Appellant's Br. p. 9. It is unclear whether Raymond is challenging the trial court's October 31, 2007, November 7, 2007, or February 19, 2008 order—all of which address the award of attorney fees. Nevertheless, Raymond's argument is without merit.

As we have discussed, Mary was a necessary party to the action. *See* I.C. § 31–14–5–6. To the extent the trial court determined that Mary was a non-party or was otherwise prohibited from filing posthearing motions, we reverse. Indiana Code Section 31–14–18–2(a)(2) provides in relevant part that a "court may order a party to pay ... a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred, before the commencement of the proceedings or after entry of judgment." Because Mary was a party to the paternity action, the trial court was permitted to order Raymond to pay Mary's attorney fees.

Raymond also argues that Mary is not entitled to an attorney fee award because she is not the "other" party as described in Indiana Code Section 31–14–18–2(a)(1), which permits the trial court to order a party to pay "a reasonable amount for the cost to the other party of maintaining an action under this article...." We agree that Mary might not be considered the "other" party for purposes of this section because Brennan, not Mary, was the only party permitted to file the petition; nevertheless, costs are not an issue in this case. Raymond challenges the attorney fee award, which is governed by Indiana Code Section 31–14–18–2(a)(2) and does not limit such an award to the "other" party.

Raymond argues in the alternative that the trial court abused its discretion in ordering him to pay Brennan's attorney fees. Raymond claims that Brennan was unjustly enriched by the award because only Mary was obligated to pay Attorney Walton. In its February 19, 2008 order, the trial court clearly ordered the attorney fees to be paid directly to Attorney Walton as permitted by Indiana Code Section 31–14–18–2(b), which provides, "The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name." Thus, Brennan did not receive a direct financial benefit of the attorney fee award. This claim also fails.

Finally, Raymond asserts that Mary should not benefit from the award because

she and Raymond are similarly financially situated. At the June 28, 2007 hearing, Mary testified that at that time she had paid Attorney Walton approximately $13,000.00 for his services. Thus, at the time of post-hearing proceedings, Raymond was ordered to pay approximately half of the attorney fees incurred on the Appellees' behalf. Given that Raymond's weekly gross income is approximately $500.00 per week higher than Mary's we cannot conclude that the trial court abused its discretion in ordering him to pay approximately one-half of the attorney fees incurred by the Appellees to establish Raymond's paternity.

■ We also address the Appellees' request for appellate attorney fees. Indiana Code Section 31–14–18–2(a)(2) specifically provides that the trial court may order a party to pay "a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred, before the commencement of the proceedings or after entry of judgment." We have held that a prior version of this statute authorized an award of attorney fees incurred in defending an appeal. *See E.W.R. v. T.L.C.*, 528 N.E.2d 106, 110 (Ind. Ct.App.1988), *trans. denied.* Raymond agrees that the statute contemplates contribution toward appellate attorney fees, but requests that we base an award of attorney fees on the outcome of this appeal. All of our conclusions today are in the Appellees' favor. Thus, an award of appellate attorney fees is proper. We remand for the trial court to determine the specific amount of the award.

### Conclusion

As a necessary party, Mary was a party to the paternity action. It was within the trial court's discretion to award retroactive child support; however, Mary, not Brennan is the proper recipient of those pay-

ments. The trial court did not abuse its discretion in ordering Raymond to pay approximately one-half of the attorney fees incurred by the Appellees. We remand for the trial court to determine the proper recipient of the payments incurred after 2005 and to determine appellate attorney fees. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and DARDEN, J., concur.