938 N.E.2d 1221 (2010)
In re PATERNITY OF D.L.
C.L., Appellant-Respondent,
v.
Y.B., Appellee-Petitioner.
No. 88A01-1002-JP-224.
Court of Appeals of Indiana.
December 21, 2010.
*1222 Alice L. Bartanen Blevins, Bartanen Law Office, LLC, Salem, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
CRONE, Judge.

Case Summary
Y.B. ("Mother") gave birth to D.L. out of wedlock. In 1996, Mother brought a paternity action against C.L., who admitted to paternity and was ordered to pay child support. For over ten years, C.L. shared the financial costs of raising D.L. with Mother and exercised regular visitation with D.L. Eventually, C.L. and Mother agreed to genetic testing, which excluded C.L. as D.L.'s biological father. Genetic testing established another man as D.L.'s biological father, and paternity was formally established in that man. At that time, C.L. was behind on his child support payments. He asked the trial court to be relieved from paying the child support arrearage because the paternity test showed that he is not D.L.'s biological father. The trial court denied his request, and C.L. appeals. We conclude that because C.L.'s paternity was vacated due to mistake of fact, his child support, including any arrearage, must be terminated. Therefore, we reverse and remand.

Facts and Procedural History
D.L. was born on December 16, 1993. On April 24, 1996, Mother and the Washington County prosecutor filed a petition to establish paternity and compel support, which alleged that C.L. was the biological father of D.L. and his younger brother.[1] On June 13, 1996, a hearing on the petition was held, and C.L. admitted to being the father of D.L. and his brother. On June 26, 1996, the trial court entered an order finding C.L. to be the children's legal father. Subsequently, C.L. was ordered to pay child support for the benefit of both children.
On July 8, 2008, C.L., pro se, filed a motion to modify custody. On September *1223 8, 2008, a hearing on the motion was held, at which both parties and D.L. appeared.[2] On September 30, 2008, the trial court issued an order modifying custody and child support, in which it granted C.L. physical custody of D.L. and modified C.L.'s child support to $38.00 per week ($12.00 child support plus $26.00 toward arrearage).
On December 12, 2008, Mother requested a hearing on the matter of D.L.'s custody and child support. On March 4, 2009, the trial court entered an agreed order of modification and DNA testing, which the parties had jointly submitted. Appellant's App. 48-49. The agreed order provided that primary physical custody of D.L. be returned to Mother, that C.L.'s child support payment remain at $12.00 per week, and that the parties submit to DNA testing to determine D.L.'s paternity. The State did not object to the parties' agreement. On March 20, 2009, the trial court issued an order entering the DNA test results into evidence, which showed that C.L. was not D.L.'s father.
The chronological case summary ("CCS") indicates that on April 22, 2009, the State notified the trial court that it had met with the parties and would tender an entry to the court and that the matter was set for hearing on July 22, 2009. The CCS entry for May 6, 2009, states, "Entry for April 22, 2009, entered" and that a hearing on petition to modify custody and support was set for July 22, 2009.[3]Id. at 19.
At the July 22, 2009, hearing, C.L., Mother, and the prosecutor appeared. The prosecutor informed the trial court that she had talked to C.L. and Mother, and that she had advised Mother to get new paternity established for D.L. based on the genetic testing that showed that K.G. was D.L.'s biological father and C.L. was not. In addition, the prosecutor told the trial court that C.L.'s child support had been recalculated to $48.53 for one child, D.L.'s brother, to take effect from the date of the new paternity establishment, March 20, 2009. Tr. Vol. 1 at 5.[4] The prosecutor informed the trial court that C.L.'s arrearage for both children was approximately $9000, and that she had explained to C.L. that "until there is a new paternity established he is still responsible for that arrearage as well as the new support now that is established for the [] one child." Id. at 7. However, C.L. told the prosecutor that he should be relieved of the child support arrearage relating to D.L., and he asked the trial court for a public defender to represent him on that matter. The trial court ordered that C.L. be appointed counsel, and counsel was appointed on September 18, 2009.[5]
On September 25, 2009, in a separate cause number, the trial court issued an order entering Mother's and K.G.'s agreed stipulation to establish paternity, pursuant to which K.G. was established as D.L.'s legal father, D.L.'s birth record was to be amended to change D.L.'s legal father from C.L. to K.G., Mother was to retain custody of D.L., and K.G. was granted reasonable visitation. Appellee's App. at 11-12.
On October 21, 2009, the prosecutor filed a petition in the matter before us for information *1224 for rule to show cause, alleging that C.L. had been ordered to pay child support of $12.00 per week beginning on October 3, 2008, had failed to make payments, and was $9007.71 in arrears. Id. at 4. On January 20, 2010, a hearing was held. C.L. was present and represented by an attorney, and Mother and the prosecutor were present. The prosecutor informed the trial court that until genetic testing had established that C.L. was not D.L.'s biological father, C.L. had been paying more than required on his child support obligation to reduce his arrearage, but as of January 15, 2010, his arrearage was $8595.71. The prosecutor asked that C.L. comply with the order to pay $12.00 per week until the arrearage was satisfied.
C.L.'s attorney contended that C.L. should not be held responsible for the amount of child support arrearage relating to D.L. because it would be "inequitable and unjust." Tr. Vol. 2 at 7. She argued,
[W]e believe based upon testimony previously offered, offered to this court [] that it was that the mother knowingly [] deceived him in terms of the child's paternity and only sought to establish [] that my client was not the child's father when the child had chosen to come live with [C.L.].
Id.
After considering the parties' arguments, the trial court concluded, But it seems to me like that what happened here wasn't something that was just stumbled upon, you know, like you went to the doctor to get a[] test for something and they found out that the DNA's didn't match.
I think that [C.L.'s] was a, a deliberate attempt to see whether or not what [he] believe[d] to be true, was in fact true, which apparently it was. That you weren't the father. But until that time [,] even though you may have, even if what you say is true, that you've been deceived by it. It seems to me that for all inten[ts] and purposes you were Dad. [] I know that may seem unfair, but what happened during all that time [is] that the child was[,] if we do what you are asking me to do, then the child would have been deprived of support through no fault of his own. And I know you've been good to him, you took him in.
....
I don't think you ought to pay child support on him after you learned the results of the test.
....
Well, the question is whether or not that should go on the arrearage. And whether or not that should continue until the arrearage is, is discharged. I think it should until we knew otherwise.
Id. at 13-14.
On January 29, 2010, the trial court issued an order denying C.L.'s request to reevaluate child support arrearage with respect to D.L., and finding that C.L. had a child support arrearage of $8595.71 as of January 15, 2010. Appellant's App. at 3-4. C.L. appeals.

Discussion and Decision

I. Disestablishing Paternity
C.L. first asserts that the trial court erred in failing to disestablish his paternity of D.L. Although C.L. does not refer to relief from a judgment or order pursuant to Indiana Trial Rule 60, that rule clearly applies. In re M.B.H., 571 N.E.2d 1283, 1285 (Ind.Ct.App.1991). The decision whether to grant or deny a motion for relief from judgment is reviewable for an abuse of discretion. In re Paternity of M.M.B., 877 N.E.2d 1239, 1242 (Ind.Ct. App.2007). An abuse of discretion occurs only when the judgment is clearly against the logic and effect of the facts before the *1225 court and the inferences which may be drawn therefrom. Fairfield v. Fairfield, 538 N.E.2d 948, 950 (Ind.1989).
Title 31, Article 14 of the Indiana Code governs the establishment of paternity. To establish a man's paternity of a child born out of wedlock, Indiana Code Section 31-14-2-1 provides two exclusive methods: (1) an action under Article 31-14 or (2) the execution of a paternity affidavit in accordance with Indiana Code Section 16-37-2-2.1.[6] Where paternity is established by affidavit, Indiana Code Section 16-37-2-2.1(j) permits rescission of the affidavit when certain conditions are met.[7]
C.L. argues that his case satisfies the requirements for rescission of a paternity affidavit pursuant to Indiana Code Section 16-37-2-2.1(j), and therefore his paternity should be disestablished. However, Indiana Code Section 16-37-2-2.1(j) does not apply here because C.L. did not establish his paternity by executing a paternity affidavit. Instead, C.L.'s paternity was established by an action commenced pursuant to Article 31-14 when Mother and the prosecutor filed the petition to establish paternity. Thus, C.L.'s argument based on Indiana Code Section 16-37-2-2.1(j) is unavailing.
C.L.'s argument that the trial court erred in failing to disestablish his paternity of D.L. fails for an additional reason. Although the Indiana Code does not address the disestablishment of paternity where paternity was established by an action commenced pursuant to Article 31-14, that objective may be properly pursued via a motion to disestablish paternity, a motion to vacate paternity order, or a Trial Rule 60(B) motion for relief from judgment, but C.L. did not file any such motions, present an oral request, or offer any argument before the trial court on this matter. The failure to raise an issue before the trial court will result in waiver of that issue. Van Winkle v. Nash, 761 N.E.2d 856, 859 (Ind.Ct.App.2002). Accordingly, C.L. has waived his argument that the trial court erred in failing to disestablish paternity.
Nevertheless, for all intents and purposes C.L.'s paternity of D.L. has been disestablished. Indeed, the State argues that a motion to disestablish paternity is not necessary because paternity was established in K.G. in September 2009. If paternity has been established in K.G., it follows that it must be disestablished in C.L. In addition, the trial court entered the paternity tests showing that C.L. is not D.L.'s biological father and also found that C.L. should not be responsible for any further child support for D.L. Tr. Vol. 2 at 14. In effect, the State no longer deems C.L. to be D.L.'s legal father, and C.L. has lost the rights and obligations contingent to that status. As such, we will address *1226 C.L.'s argument as to his child support arrearage.

II. Child Support Arrearage
C.L. asserts that the trial court erred in denying his request to be relieved of his child support arrearage with respect to D.L. We observe that decisions regarding child support generally rest within the sound discretion of the trial court. Painter v. Painter, 773 N.E.2d 281, 282 (Ind.Ct. App.2002). We will reverse a trial court's decision in child support matters only for an abuse of discretion or if the trial court's determination is contrary to law. Young v. Young, 891 N.E.2d 1045, 1046 (Ind. 2008).
C.L. contends that his paternity of D.L. was established based on fraud or mistake of fact, and therefore he is entitled to relief. The State asserts that the general rule is that trial courts have no authority to retroactively modify child support. See Ind.Code § 31-16-16-6 (providing that "a court may not retroactively modify an obligor's duty to pay a delinquent support payment.").[8] The State's characterizes C.L.'s request as one of retroactive "modification," but we do not think that is a fair characterization of C.L.'s request to be relieved of child support arrearage based on the finding that he is not D.L.'s biological father.
We find support for our rejection of the State's characterization in a statute that neither party cites but that clearly addresses the basis for C.L.'s request for relief. Indiana Code Section 31-14-11-23 provides, "If a court vacates or has vacated a man's paternity of a child based on fraud or mistake of fact, the man's child support obligation, including any arrearage, terminates." (Emphasis added.) To date, no Indiana appellate court has applied Indiana Code Section 31-14-11-23. We note that when interpreting a statute, our goal is to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind.2002). The best evidence of legislative intent is the language of the statute itself, and therefore we strive to give the words in a statute their plain and ordinary meaning. Mayes v. Second Injury Fund, 888 N.E.2d 773, 776 (Ind.2008).
C.L. asserts that he "affirmed paternity verbally in front of the court based upon the declarations of the child's mother," and that the possibility that he might not be D.L.'s biological father "came to light as a result of Mother's motion to review custody and regain custody of [D.L.]." Appellant's Br. at 8. Thus, he contends that "he was misled by mother and her untruths led to his assumption of paternity." Id. at 9. We need not dwell on whether Mother misled C.L. because Section 31-14-11-23 applies where a man's paternity is vacated based fraud or mistake of fact. Here, the mistake of fact was that C.L. is D.L.'s biological father. Because C.L.'s paternity was established based on mistake of fact, his child support for D.L., including his arrearage, terminates pursuant to Section 31-14-11-23.
The State argues that C.L.'s child support arrearage may not be terminated, citing Indiana Department of Public Welfare v. Murphy, 608 N.E.2d 1000 (Ind.Ct. *1227 App.1993). In Murphy, Peter and Tina were married and had a child. They divorced, and pursuant to their dissolution decree, Tina was granted custody and Peter was ordered to pay child support. Tina then married Timothy, and a blood test established that he was the child's biological father. Peter and Tina agreed that Peter should not be required to pay any more child support. Because the State had collected money for AFDC payments made to Tina from Peter through income tax refunds and garnishments, Peter filed a complaint contending that he was entitled to reimbursement of the money erroneously collected by the State. The trial court granted Peter's summary judgment motion, and the State appealed.
We reversed the trial court, and in doing so noted,
[I]n this state after support installments have accrued, the court is without power to reduce, annul or vacate such orders retrospectively, and therefore, the court committed error in attempting to do so. Therefore, payments must be made in the manner, amount, and at the times required by the support order embodied in the divorce dissolution decree until such order is modified or set aside. Indiana does permit cancellation or modification of support orders as to future payments; but, all modifications operate prospectively.
Id. at 1002 (citations, quotation marks, and brackets omitted).
Murphy is inapplicable to the case at bar. In Murphy, Peter asked to be reimbursed for what he had already paid. Here, C.L. is not asking for reimbursement, but to be relieved from the obligation to pay his child support arrearage. In addition, Murphy was decided in 1993, before the predecessor to Indiana Code Section 31-14-11-23 was added to the Indiana Code in 1994.[9] Based on the foregoing, we conclude that the trial court erred in denying C.L.'s request for relief from his obligation to pay his child support arrearage relating to D.L.[10] Therefore, we reverse the trial court's order denying C.L.'s request for relief from child support arrearage with respect to D.L. Because our decision does not affect C.L.'s obligation to pay his child support arrearage with respect to D.L.'s brother, we remand for a calculation of the amount of C.L.'s child support arrearage that pertains to D.L.'s brother and the formulation of an appropriate payment plan for that arrearage.
As previously mentioned, the application of Indiana Code Section 31-14-11-23 is a matter of first impression. This case permits us to make two observations regarding its application. First, because Section 31-14-11-23 terminates child support, including arrearage, where fraud or mistake of fact occurred in establishing paternity, the trial court's determination that C.L. is still responsible for his child support arrearage even if he was deceived is inconsistent *1228 with the statute. See Tr. Vol. 2 at 13 (trial court explaining to C.L. that he was D.L.'s father "even though you may have, even if what you say is true, that you've been deceived by it.").
Second, the trial court rejected C.L.'s request to terminate his child support arrearage based in part on its observation that C.L. did not "stumble" upon the results of the genetic testing. Id. We note that Section 31-14-11-23 does not require that genetic testing proving nonpaternity be obtained inadvertently. The trial court's focus on whether C.L. inadvertently discovered his nonpaternity appears to be based on a line of cases beginning with Fairrow v. Fairrow, 559 N.E.2d 597, 600 (Ind.1990), in which our supreme court concluded that the mother's former husband was entitled to termination of the child support required by the dissolution decree because the genetic testing that established that he was not the child's biological father was conducted in the course of ordinary medical care because the child had sickle cell anemia.[11]See also Paternity of M.M.B., 877 N.E.2d at 1243-45 (concluding that trial court erred in vacating judgments establishing man's paternity where man actively sought genetic evidence after children told him that he might not be their father, and thus did not inadvertently obtain medical proof through ordinary medical care concerning paternity); Matter of Paternity of K.M., 651 N.E.2d 271, 274-76 (Ind.Ct.App.1995) (holding that party may not challenge otherwise valid order establishing paternity without medical proof inadvertently obtained through ordinary medical care and concluding that joint voluntary petition to establish paternity was executed without fraud); Pinter v. Pinter, 641 N.E.2d 101, 104-05 (Ind.Ct.App.1994) (reversing trial court's judgment to set aside paternity in dissolution decree because mother's former husband did not stumble upon medical evidence that showed he was not child's father and evidence was insufficient to support finding that wife committed fraud on the court in prior dissolution proceeding in which it was mistakenly determined that husband was father); Leiter v. Scott, 638 N.E.2d 1335, 1336-37 (Ind.Ct.App. 1994) (holding that former husband was not entitled to relief from child support provision in dissolution decree where his petition for relief did not present any externally obtained medical proof of nonpaternity). We observe that Fairrow was decided before the original version of Section 31-14-11-23 was added to the Indiana Code in 1994. Further, Section 31-14-11-23 governs the remedy to be implemented once a man's paternity has been vacated, not the propriety of vacating paternity. Thus, to the extent that these cases involve a challenge to paternity, they confront an issue different from that addressed in Section 31-14-11-23.
Reversed and remanded.
KIRSCH, J., and BRADFORD, J., concur.
NOTES
[1] The State is representing its interests in this matter because Mother is a Title IV-D recipient. See Collier v. Collier, 702 N.E.2d 351, 353 (Ind.1998) (observing that Ind.Code § 12-17-2-21, which is now codified at Ind. Code § 31-25-4-13.1, grants the Child Support Bureau the explicit authority to contract with prosecuting attorneys or private attorneys to "undertake activities ... including establishment of paternity, establishment, enforcement, and modification of child support orders, ... and if the contract is with a prosecuting attorney, prosecutions of welfare fraud").
[2] The record before us does not contain a transcript of this hearing.
[3] The April 22, 2009, entry is not included in the record before us.
[4] The record on appeal includes two transcripts of different hearings that do not contain consecutively numbered pages as required by Indiana Appellate Rule 28(A)(2). Therefore, we cite the transcript by volume number and page.
[5] C.L.'s counsel did not file an appearance until January 13, 2010.
[6] Indiana Code Section 16-37-2-2.1(n) states, "Except as provided in this section, if a man has executed a paternity affidavit in accordance with this section, the executed paternity affidavit conclusively establishes the man as the legal father of a child without any further proceedings by a court." However, "a man who is a party to a paternity affidavit executed under this section may, within sixty (60) days of the date that a paternity affidavit is executed under this section, file an action in a court with jurisdiction over paternity to request an order for a genetic test." Ind. Code § 16-37-2-2.1(i).
[7] Indiana Code Section 16-37-2-2.1(j) provides,

A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:
(1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
(2) at the request of a man described in subsection (i), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.
[8] The two exceptions to this general rule occur when

(1) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, or (2) the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised.
Whited v. Whited, 859 N.E.2d 657, 662 (Ind. 2007).
[9] Indiana Code Section 31-14-11-23 replaced Section 31-6-6.1-21. Pub. Law 1-1997 § 6. Section 31-6-6.1-21 was added to the Indiana Code as a new section in 1994. Pub. Law 101-1994 § 20. Section 31-6-6.1-21 read, "Whenever a court vacates or has vacated a man's paternity of a child based on fraud or mistake of fact, the man's child support obligation, including any arrearage, terminates."
[10] We observe that K.G. may be held responsible for D.L.'s child support from birth. See Ind.Code § 31-14-11-5 (providing that a child support order may include the period dating from the birth of the child and must include the period dating from the filing of the paternity action); In re Paternity of McGuire-Byers, 892 N.E.2d 187, 190-92 (Ind. Ct.App.2008) (holding that trial court did not abuse its discretion by ordering that father pay retroactive child support after adult child filed paternity action), trans. denied.
[11] In concluding that mother's former husband was entitled to the termination of child support, our supreme court explained,

Although we grant Joe relief, we stress that [] the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action. In granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a new tactical nuclear weapon for divorce combatants. One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court.
Fairrow, 559 N.E.2d at 600.