## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 24 2016, 9:03 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jonathan M. Young
Law Office of Jonathan M. Young, P.C.
Newburgh, Indiana

ATTORNEYS FOR APPELLEE

B. Michael Macer
Benjamin R. Aylsworth
Biesecker Dutkanych & Macer, LLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of
Ember Mazzotti-Dill

Sherry Mazzotti,

*Appellant-Petitioner,*

v.

Heath Dill,

*Appellee-Respondent*

February 24, 2016

Court of Appeals Case No.
87A01-1506-JP-725

Appeal from the Warrick Superior Court

The Honorable J. Zach Winsett, Special Judge

Trial Court Cause No.
87D02-1310-JP-224

**Crone, Judge.**

# Case Summary

[1] Sherry Mazzotti ("Mother") appeals the trial court's order establishing Heath Dill's ("Father") paternity of Ember Mazzotti-Dill ("Child") and post-secondary education expenses for her. Mother argues that the trial court erred by declining to require Father to pay child support retroactive to the date of Child's birth. Mother also argues that the trial court abused its discretion in apportioning the parents' obligation toward Child's remaining college expenses and ordering her to pay $6000 per year when she allegedly lacks income and ability to earn wages sufficient to pay that amount.

[2] We conclude that the trial court did not abuse its discretion by declining to order Father to pay retroactive child support. We also conclude that the trial court's finding regarding Mother's ability to pay is not clearly erroneous and supports its decision. Therefore, we affirm.

# Facts and Procedural History

[3] The facts most favorable to the judgment show that on December 26, 1995, Child was born. Father acknowledged paternity and signed the paternity affidavit.

[4] At the time of Child's birth, Mother and Father were living with Child's grandmother. In April 1996, Father moved out. However, he and Mother had an "off and on relationship," and Father sporadically lived at grandmother's home until November 1999, when he and Mother ended their relationship. Tr.

at 66. Between 1995 and November 1999, Father's visitation with Child was sporadic. During this period, Father worked at Barnes and Noble Cafe and at St. Mary's Health. He also attended one full-time semester at University of Southern Indiana ("USI"). Father's earnings ranged from approximately $6760 in 1996 to $17,930 in 1999. Father obtained health insurance for Child whenever it was available through his employer. Between 1998 and 2000, Mother worked as a part-time waitress.

[5] In 2000, Father got married. He began to have regular weekend visitation with Child. In June or July of that year, he voluntarily began to pay Mother child support in the amount of $120 every four weeks. In 2001 and 2002, Father worked at St. Elizabeth Ann Seton Hospital. In 2002, Father began working for the Town of Newburgh. Between 2000 and 2005, Father made about $20,000 a year. In 2006, Father made about $24,000 a year.

[6] Mother and Child continued to reside with grandmother during Child's elementary school years. Grandmother was very active in Child's life. Grandmother usually took Child to school and prepared her meals. When Child needed or wanted something, she turned to her grandmother more often than Mother, although "sometimes" she turned to Mother. *Id*. at 192. Child lived with grandmother through fifth grade.

[7] In 2006, Mother moved out of grandmother's home and began living with Stephen Wargel. A couple months later, Child moved in with Mother and Wargel. However, Child "never actually lived [with Mother and Wargel]

completely." *Id*. at 192-93. Child still spent most of her time at grandmother's and "just slept at [Mother's] house." *Id*. at 193. From 2007 to 2009, Mother worked parttime at her father's dental lab. Mother gave birth to another child in 2009. Since 2009, she has been a stay-at-home mom, and she has continued to reside with Wargel.

[8] In 2007, Father earned approximately $31,000. In 2008, he was promoted and made about $41,000. Father then voluntarily increased the amount of child support to $150 every four weeks. "There were a handful of times over the years" when Father asked Mother if there was any extra help he could give her. *Id*. at 71. Mother always replied that the amount of child support that he provided was fine. At no time did Mother tell Father that the child support he was providing was not enough or that she needed more child support. *Id*. at 72.

[9] In 2009, Father made about $48,990. In 2010, he made $52,630. During this time, Father continued to provide child support of $150 every four weeks. He never increased child support. In 2010, Father divorced. By that time, he had two additional children. In 2011, Father made $42,190. In 2012, he made $44,040. At some point, Father remarried.

[10] In February 2013, when Child was a high school junior, she went to live with Father and his wife, Margaret Dill. In March 2013, Father stopped paying child support. In 2013, Father made about $41,170. At the beginning of the summer, Child went to live with her grandmother. In November 2013, Mother filed a paternity action against Father and a petition to establish post-secondary

education expenses. In December 2013, after Child turned 18, she went to live with Father, and she remained with him until the end of the summer in 2014. In January 2014, Father filed a petition for child support and education support.

[11] Child applied and was admitted to Butler University and USI. Child wishes to become a teacher. Child decided to attend Butler. The cost to attend Butler is about $48,587 per year, but after Child's scholarships, grants, and other financial aid is applied, the remaining out-of-pocket cost is $24,387. The cost to attend USI is about $18,000 per year. Mother did not want Child to attend Butler because Mother did not believe that an expensive private school justifies a teacher's salary and she does not have the ability to pay for Child to attend a private school. Father offered to pay $7000 a year toward Child's college expenses. Child began her first year at Butler in the fall of 2014. Father took out a Direct Parent Plus Loan in the amount of $26,574. Mother did not contribute.

[12] In June 2015, following a hearing on both parties' petitions, the trial court entered its order establishing paternity and for post-secondary education expenses ("Order"). Appellant's App. at 9-10. In its Order, the trial court established Father's paternity and found that neither party owed the other a child support arrearage. As for post-secondary education expenses, the trial court found that Child has the aptitude and ability to succeed in post-secondary education. The trial court determined that Mother and Father should contribute no more than $6000 per year toward Child's college expenses. The trial court "based its order regarding parental contribution amounts on the

[USI] cost of $18,000, with each the Mother, Father, and [Child] being responsible for 1/3 of the cost of attendance, beginning with the 2015-2016 school year." *Id*. at 10. In addition, the trial court ordered Father to maintain Child on his health insurance plan.

[13] The trial court attached two additional pages to its Order. The first attachment is an explanation, which begins as follows: "The court is not issuing Findings of Fact and Conclusions of Law but will explain some of the reasons for the court's ruling in this matter." *Id*. at 12. The second attachment is a Post-Secondary Education Worksheet ("PSEW") completed by the trial court. The explanation states that Father's share of the parents' total weekly adjusted income is 72% and Mother's is 28%. It further states that the trial court used the cost of attending USI in setting Mother's and Father's contribution at no more than $6000 per year for Child's remaining years. The explanation shows that based on what each parent contributed toward Child's first year and on each parent's $6000 annual contribution, Father's total contribution to Child's college expenses will be $47,574 and Mother's will be $21,000.[1] The explanation concludes that the total parental post-secondary responsibility is $68,574 with Father contributing 69% and Mother contributing 31%. The explanation provides that the "court considers that the Mother is voluntarily unemployed and has been so for the vast majority of her adult life." *Id*. The

---

[1] The amounts are different because Father contributed $26,574 to Child's first year of college while Mother contributed nothing. Also, these amounts are based on four and a half semesters of college.

explanation also states that "Mother is able to pay, or cause to be paid, the amount ordered by the court" because she presented an extensive list of all the things she had provided for Child in one of Father's interrogatories. *Id.*

[14] The PSEW differs from the trial court's explanation in certain respects. The PSEW shows that Father's share of total weekly adjusted income is 72.28% and Mother's is 27.72%. Total education costs are based on the cost to attend Butler, not USI. The PSEW provides that Child's total yearly education cost is $48,587, and the parents' total obligation of that is $24,387. Father's share of $24,387 is 72.28%, or $17,626.92, and Mother's share is 27%, or $6760.08. Mother appeals.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in finding that Father did not owe child support retroactive to Child's birth.

[15] Mother argues that the trial court abused its discretion by declining to require Father to pay child support retroactive to the date of Child's birth. When dealing with family law matters, appellate review is conducted with "'a preference for granting latitude and deference to our trial judges.'" *Kicken v. Kicken*, 798 N.E.2d 529, 532 (Ind. Ct. App. 2003) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)).

> A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion. A trial court abuses its discretion when its decision is clearly against the logic

and the effect of the facts and circumstances before the court or if the court has misinterpreted the law.

*Sexton v. Sedlak*, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), *trans. denied*.

[16]     In a paternity action, the initial child support order must include the period dating from the filing of the paternity action and may, at the trial court's discretion, include the period dating from the birth of the child. Ind. Code § 31-14-11-5. The trial court may order either parent to pay any amount reasonable for support of a child, after considering all relevant factors, including

>    (1) the financial resources of the custodial parent;
>
>    (2) the standard of living the child would have enjoyed if:
>
>    >    (A) the marriage had not been dissolved;
>    >
>    >    (B) the separation had not been ordered; or
>    >
>    >    (C) in the case of a paternity action, the parents had been married and remained married to each other;
>
>    (3) the physical or mental condition of the child and the child's educational needs.

Ind. Code §§ 31-14-11-2.3; 31-16-6-1(a).

[17]     Mother likens this case to *In re McGuire-Byers*, 892 N.E.2d 187 (Ind. Ct. App. 2008), *trans. denied*, in which this Court held that the trial court did not abuse its discretion by ordering the father to pay child support retroactive to the child's

birth. *Id.* at 192. There, the child was born in 1987 and filed a petition for paternity in 2006. The trial court found that the father was aware of the child's birth and "then purposefully disappeared and made himself impossible for mother to locate," and the mother bore "the entire burden" of supporting the child. *Id.* at 191. The trial court issued a child support order that was retroactive to the date of the child's birth, and the father's arrearage amounted to $118,560. On appeal, the father claimed that the trial court failed to consider his financial resources and the hardship that the arrearage would place on his four other young children. The *McGuire-Byers* court was unpersuaded by the father's arguments and concluded, "Given that [the father] was aware that he was [the child's] father from the time of his birth and knowingly avoided his responsibility to support him, it was within the trial court's discretion to order retroactive child support." *Id.* at 192.

[18] *McGuire-Byers* is distinguishable in two important respects. There, the father purposefully avoided taking any responsibility for financially supporting the child, and the trial court in its discretion ordered child support retroactive to the child's date of birth. Here, in contrast, Father voluntarily paid child support from 2000 to March 2013, and the trial court in its discretion decided that retroactive child support to the date of Child's birth was not appropriate under the circumstances. Secondly, *McGuire-Byers*' holding that it wasn't an abuse of discretion to order retroactive support payments does not mean that it is an abuse of discretion to deny it.

[19] Nevertheless, Mother contends that Father paid only $17,740 in child support over the years, and she alleges that he would have been required to pay $72,280 under the Indiana Child Support Guidelines. She argues that Father's contributions were wholly inadequate, that he merely paid what he felt that his budget would allow, and that he must have known that he should have been paying more. She also asserts that she "deserves recognition for devoting her time and her life to her daughter." Appellant's Reply Br. at 3.

[20] The trial court heard evidence regarding each parent's earnings over the course of Child's life, how much child support Father paid, that Mother and Child lived with grandmother through Child's fifth-grade year, and that grandmother provided significant assistance in raising Child. In addition, Father testified that he sometimes asked Mother whether she needed more child support and she replied that the amount that he was providing was fine. Accordingly, we cannot say that the trial court abused its discretion in declining to order Father to pay retroactive child support.

## Section 2 – The trial court did not abuse its discretion by ordering Mother to contribute $6000 per year toward Child's remaining college expenses.

[21] "An appellate court reviews a trial court's decision to order the payment of post-secondary educational expenses for an abuse of discretion." *Hirsch v. Oliver*, 970 N.E.2d 651, 662 (Ind. 2012) (citing *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind. 1992)). The trial court abuses its discretion when its decision is "against the logic and effect of the facts and circumstances" before it. *Id*. In determining

whether the trial court abused its discretion, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence and reasonable inferences favorable to the judgment. *Lovold v. Ellis*, 988 N.E.2d 1144, 1150 (Ind. Ct. App. 2013).

[22]     Although the trial court stated that it did not issue findings of fact and conclusions of law, it provided limited findings in its explanation attached to its Order. "'When the trial court enters such findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found.'" *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1215 (Ind. Ct. App. 2002) (quoting *Nelson v. Marchand*, 691 N.E.2d 1264, 1267 (Ind. Ct. App. 1998)). "For findings of fact to be clearly erroneous, the record must lack probative evidence or reasonable inferences from the evidence to support them." *Id*.

> Under Indiana law, there is no absolute legal duty on the part of parents to provide a college education for their children. However, the statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses.

*Hinesley-Petry v. Petry*, 894 N.E.2d 277, 280-81 (Ind. Ct. App. 2008) (quoting *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994)), *trans. denied* (2009).

[23] "[C]ollege expenses are in the nature of child support." *Panfil v. Fell*, 19 N.E.3d 772, 778 (Ind. Ct. App. 2014), *trans. denied* (2015). "[A]lthough a trial court has broad discretion to tailor a child support award in light of the circumstances before it, 'this discretion must be exercised within the methodological framework established by the guidelines.'" *Quinn v. Threlkel*, 858 N.E.2d 665, 670 (Ind. Ct. App. 2006) (quoting *McGinley-Ellis v. Ellis*, 638 N.E.2d 1249, 1251-52 (Ind. 1994)). "This principle applies with equal force to orders regarding post-secondary education expenses." *Id*. Indiana Child Support Guideline 8(b) provides that "the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." Absent an evidentiary justification in the record and a finding by the trial court that a proportional obligation would be unfair, the Child Support Guidelines require that apportionment of educational expenses between the parents be roughly proportional to their share of income. *Carr*, 600 N.E.2d at 946.

[24] Indiana Code Section 31-16-6-2(a) provides that a child support order or an educational support order may include

> (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses.

Here, there is no dispute that Child has the aptitude and ability to attend college. Mother asserts that the trial court abused its discretion in calculating the parents' share of total weekly adjusted income and in apportioning their college contribution. She also challenges its finding that she has the means to pay $6000 per year.

Regarding total weekly adjusted income, we observe that the PSEW shows that Father's share is 72.28% and Mother's share is 27.72%. Mother contends that the trial court did not provide the underlying income figures that it used to calculate those percentages and that her Child Support Obligation Worksheet indicates that Father's share is 77% and her share is 23%. Our own estimates are not far off the trial court's numbers. In 2013, Father earned $41,172, or $762 per week. Ex. S; Appellant's Br. at 5. Even though Mother has chosen to

be a stay-at-home mother, she acknowledged that she is physically and mentally able to be employed and "requested that the trial court figure her income at the federal minimum wage." Appellant's Br. at 4. The current minimum wage is $7.25 per hour, which comes to $290 per week based on a forty-hour work week. Based on Father's weekly income of $762 and Mother's weekly income of $290, Father's share of the total weekly income is 73.20% and Mother's is 26.8%. This is roughly equivalent to the trial court's figures, and therefore we find no abuse of discretion here. *See Eppler v. Eppler*, 837 N.E.2d 167, 177 (Ind. Ct. App. 2005) ("While the statutes and our guidelines do not require apportionment based on precise parity, they do require rough proportionality.") (quoting *Carr*, 600 N.E.2d at 946).

[27] Mother next argues that the trial court abused its discretion in apportioning the parents' college contribution. Specifically, she assert she should not be required to pay 50% of the parents' annual obligation of $12,000 for Child's remaining years. Mother ignores that she did not contribute anything for Child's first year while Father contributed $26,574 and that the trial court considered these amounts when calculating the parents' share of their obligation toward Child's total college cost. When these amounts are considered, the total parental obligation for all of Child's years at Butler is $68,574. Father's share of that is 69% and Mother's is 31%. That is roughly equivalent to the parties' share of total weekly income. We find no abuse of discretion here.

[28] As for Mother's ability to pay $6000 annually for Child's remaining college years, the trial court made some findings in that regard:

The court considers that the Mother is voluntarily unemployed and has been so for the vast majority of her adult life. The Mother agreed that she is physically and mentally able to be employed if she would so choose. Even though the Mother has never earned any regular income, she otherwise testified that she always provided financially for [Child], and for her subsequent child. In addition, the court notes, in support of its finding that Mother is able to pay, or cause to be paid, the amount ordered by the court for post-secondary expenses, portions of Mother's answer to Interrogatory No. 16, which was entered into evidence as Father's Exhibit U: …I paid almost every school fee: book fees, lunch fees, field trip fees, sports enrollment fees and equipment fees (basketball, dancing and ballet, lacrosse, etc.), activity fees, school supplies, backpacks, costumes, uniforms, SAT fees, ACT fees, college application fees, gas, school clothes, winter coats, yearbook fees, school picture fees, etc. I made sure she had access to all the tools needed for her education: computers, laptops, printers, scanners, copiers, software, flash drives, digital cameras, cell phones, an automobile, etc.…We took her to museums, zoos, nature reserves, aquariums, historic sites, 4-H fairs, and other areas for learning."

Appellant's App. at 12. We conclude that the trial court's finding is not clearly erroneous. Therefore, we cannot say that the trial court abused its discretion in requiring Mother to pay $6000 per year toward Child's remaining college expenses.

[29]   Affirmed.

Vaidik, C.J., and Bailey, J., concur.