**In re the Paternity of R.M.**

**K.B., Appellant–Petitioner,**

**v.**

**S.M., Appellee–Defendant.**

**No. 45A04–1001–JP–14.**

Court of Appeals of Indiana.

Dec. 30, 2010.

Robert M. Hess, Andrew P. Martin, Sachs & Hess, P.C., St. John, IN, Attorneys for Appellant.

Matthew T. Albaugh, Jaimie L. Zibrowski, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

K.B. ("Putative Father") appeals the trial court's order granting the motion filed by S.M. ("Mother") to dismiss his petition to establish paternity of Mother's child, R.M., based on the doctrine of laches. Because Mother designated evidence in support of her motion to dismiss, we review the trial court's order as one granting summary judgment. Putative Father raises three issues, one of which we find dispositive, that is whether the designated evidence supports the trial court's conclusion that Putative Father's petition to establish paternity is barred by laches as a matter of law. We reverse and remand.[1]

The relevant facts follow. In early 1996, Mother learned that she was pregnant. At the time Mother was not married, and either Putative Father or W.M. could have been the father. Mother told Putative Father and W.M. that each might be the father of R.M. Putative Father told Mother "that he was not ready to be a father and that he believed the baby should be raised in a two[-]parent home." Appellee's Appendix at 4. W.M. told Mother that he did not care if he might not be the father and that he would happily raise R.M. as his own. Mother married W.M. on June 29, 1996.

R.M. was born on November 5, 1996, and Mother and W.M. ("Presumptive Father") raised R.M. together. Over the years, Mother occasionally sent photos of R.M. to Putative Father. When R.M. was nine months old, Putative Father saw him briefly. Otherwise Putative Father had no contact with R.M. between 1996 and 2006, and he paid no child support.

---

1. We heard oral argument in this case on August 25, 2010. We commend counsel for their well-prepared advocacy.

Presumptive Father died suddenly in 2006. Since then, R.M. has received Social Security survivors benefits of approximately $1200 per month. After Presumptive Father's death, Mother and Putative Father dated briefly. At that time, Putative Father became acquainted with and occasionally visited with R.M. Putative Father also occasionally paid money to Mother to help support R.M.'s extracurricular activities. In 2006, Mother and Putative Father submitted samples for a home DNA test to determine the paternity of R.M. The home test results showed a 99.99 percent chance that Putative Father is R.M.'s biological father.

Two years later, on August 15, 2008, Putative Father, acting as next friend of R.M., filed a petition to establish paternity.[2] On December 1, 2008, the court held an initial hearing at which Putative Father appeared with counsel and Mother appeared *pro se.* At that hearing, Mother testified that she contested Putative Father's paternity claim and was not certain he was the biological father of R.M. Putative Father's attorney offered, and the court admitted into evidence, the results of the parties' home DNA test as well as a handwritten letter from Mother stating that Putative Father was R.M.'s biological father. Following the hearing, the court entered an order awarding Putative Father parenting time according to the Indiana Parenting Time Guidelines and ordering him to pay $50 interim child support per week. The court also gave Mother fifteen days to arrange for another paternity test.[3] Due to the cost involved, Mother did not obtain another DNA test.

On May 12, 2009, the court again convened for an initial hearing, at which both Mother and Putative Father appeared with counsel. The Chronological Case Summary ("CCS") states that evidence was heard, but according to the transcript the hearing consisted mainly of argument by counsel for each party. At the close of that hearing, the court took the paternity petition under advisement.

On June 9, 2009, Mother filed her motion to dismiss Putative Father's petition to establish paternity as well as her Brief in Support of Mother's Motion to Dismiss and Motion to Vacate the Hearing Order of December 1, 2008. Mother alleged that Putative Father's petition was barred by the doctrine of laches. On July 10, 2009, Putative Father filed his response and argued that the home DNA test was proof of Putative Father's paternity, that the paternity matter was not barred by laches, and that public policy favored proceeding with Putative Father's paternity claim. Putative Father did not designate the DNA test results as evidence to be considered in response to Mother's motion. On December 16, 2009, the court held a hearing on Mother's motion to dismiss and to vacate the order entered following the December 1, 2008 hearing. Counsel for the parties made arguments at the hearing, but the parties did not testify. After taking the matter under advisement, the court entered an order on December 18, vacating the December 1, 2008 order and granting Mother's motion to dismiss the paternity action. The December 18th order provides, in relevant part:

> 2. A Paternity Initial Appearance was set by Court Order for December 1, 2008.... [Putative Father] successfully admitted into evidence, among other things, a DNA Screening report which itself stated that the samples it utilized were not collected according to AABB guidelines and that the laboratory could

---

**2.** The record does not contain a copy of the petition to establish paternity.

**3.** The record does not contain a copy of the court's order.

not verify the origin of the DNA samples. [Mother] requested another DNA test, which the Court granted, gave her 15 days to make arrangements at any certified laboratory to conduct the testing, and ordered her to pay the initial cost.

3. On February 5, 2009, [Mother] obtained counsel who ultimately filed a Motion to Dismiss the paternity action, a Motion to Vacate the Hearing Order of December 1, 2008 and a Brief in Support thereof. [Putative Father] filed a Response to [Mother's] Motions and Brief, and the Court heard oral argument regarding the same.

4. All of the documents filed with the Court, including the Petition to Establish Paternity and the Affidavit filed by [Mother] together with her Motions, establish the following undisputed facts:

A. [R.M.] was born on November 5, 2006 while [Mother] was married to [Presumptive Father].

B. [R.M.] lived in [Presumptive Father's] and [Mother's] household from the date of his birth until [Presumptive Father's] death on February 26, 2006.

C. No affidavit of paternity was ever executed by [Putative Father], and no action to establish paternity over [R.M.] was filed by [Putative Father] until August 15, 2008, even thought [sic] [Putative Father] knew immediately after [R.M.'s] conception that there was a possibility that he could be [R.M.'s] father.

5. I.C. 31–14–7–1 provides, in relevant part, as follows:

A man is presumed to be a child's biological father, if:

(1) The:

(A) Man and the child's biological mother are or have been married to each other; and

(B) Child is born during the marriage. . . .

6. Here, [Presumptive Father] and [Mother] were married when [R.M.] was born. Under I.C. 31–14–7–1 [Presumptive Father] is presumed to be [R.M.'s] biological father. Clearly, under Indiana law, [Putative Father] had standing since the time of [R.M.'s] conception, through the time of his birth, throughout [Mother's] marriage to [Presumptive Father], and after [Presumptive Father's] death to file a paternity action to rebut the statutory presumption, *Russell v. Russell,* 682 N.E.2d 513 (Ind.1997); *K.S. v. R.S.,* 669 N.E.2d [399] (Ind.1996). However, [Putative Father] chose to do nothing after the time of conception and after [Mother's] marriage to [Presumptive Father], and, indeed, for nearly two years after [Presumptive Father's] death to initiate his attempt to rebut the statutory presumption that [Presumptive Father] was [R.M.]'s father.

7. [Putative Father] is correct in asserting that the doctrine of laches does not apply to child support cases; *Trent v. Trent,* [829] N.E.2d 81 (Ind.App.1987). Yet the case before the Court does not involve the issue of support. [R.M.] is being supported by two parents: by [Mother], with whom he lives, and by [Presumptive Father], through his Social Security Death Benefits. The Court must then consider three factors in determining whether or not laches applies in this matter, namely: (1) The claimant's knowledge of his rights, (2) a lapse of time before the claimant seeks to vindicate those rights; and (3) changed circumstances, resulting from lapse of time, causing prejudice to the claimant, *In re Marriage of Moser,* 469 N.E.2d 762 (Ind.App.1984). Here, even though [Putative Father] knew nearly from the

time of [R.M.'s] conception that he could be his father, until August 15, 2008, [R.M.] lived his entire existence under the legal presumption that [Presumptive Father] was his father. [Presumptive Father] raised him in an intact home for the first ten years of his life, and, although [Presumptive Father] tragically passed away, his legacy as [R.M.]'s father continues through the Social Security Death Benefits [R.M.] now receives. After asserting no legal claim to paternity over [R.M.] for twelve years, [Putative Father] is now asking the Court to insert himself over [Presumptive Father] as [R.M.'s] father, take away [R.M.'s] death benefits, subject [R.M.] to lengthy and protracted court proceedings (as it is [Putative Father's] stated intent to ask the court for a change in custody), and destroy in this young man's mind the belief that the man he called "father" for the first ten years of his life was, in fact, his father. Waiting for twelve years to assert a right of which [Putative Father] was aware and waiting for over two years after a potential change in circumstances effectively bars [Putative Father] from initiating an action to overcome the presumption of paternity in favor of [Presumptive Father].

Appellant's Appendix at 10–11.

The issue is whether the trial court erred by granting summary judgment to Mother. Initially, we note that Mother's motion to dismiss was filed pursuant to Ind. Trial Rule 12(B)(6) and that Mother included exhibits. Thus, we will review Mother's motion to dismiss as a motion for summary judgment.[4] *See* Ind. Trial Rule 12(B) ("If, on a motion, asserting the defense number (6), to dismiss for failure of

the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269 (Ind.2009) (citations omitted). "Review of a summary judgment motion is limited to those materials designated to the trial court." *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind.2001). Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. *Dreaded, Inc.,* 904 N.E.2d at 1269–1270. In answering these questions, we construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Id.* The moving party bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. *Id.*

We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Mangold,* 756 N.E.2d at 974. Further, a trial court is not required to grant an unopposed motion for summary judgment.

---

4. Mother and Putative Father agree that we should review Mother's motion to dismiss as a motion for summary judgment.

*Parks v. State,* 789 N.E.2d 40, 48 (Ind.Ct. App.2003), *trans. denied.* "In other words, summary judgment is awarded on the merits of the motion, not on technicalities. This principle is emphasized elsewhere in [Trial Rule 56](C), where it states, [s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits o[r] evidence, but the court shall make its determination from the evidentiary matter designated to the court." *Id.*

Here, the trial court entered findings and conclusions *sua sponte.* In summary judgment, special findings aid our review by providing us with a statement of reasons for the trial court's actions, but they have no other effect. *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.,* 751 N.E.2d 702, 709 (Ind.Ct.App.2001). Rather than relying upon the trial court's findings and conclusions, we must base our decision upon the materials properly presented to the trial court under Ind. Trial Rule 56(C). *Id.*

Initially, we must decide whether laches applies to paternity cases and if so, whether the evidence designated by Mother supports the trial court's finding that Putative Father's petition is barred by laches.

## I. *Laches in a Paternity Action*

■ "The general doctrine is well established and long recognized: 'Independently of any statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them.'" *SMDfund, Inc. v. Fort Wayne–Allen Cnty. Airport Auth.,* 831 N.E.2d 725, 729 (Ind.2005) (quoting *Penn Mut. Life Ins. Co. v. Austin,* 168 U.S. 685, 698, 18 S.Ct. 223, 42 L.Ed. 626 (1898) (quoting

*Speidel v. Henrici,* 120 U.S. 377, 387, 7 S.Ct. 610, 30 L.Ed. 718 (1887))), *cert. denied,* 546 U.S. 1093, 126 S.Ct. 1051, 163 L.Ed.2d 859 (2006), *reh'g denied.* Laches requires: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *Id.*

Putative Father first contends that laches does not apply to paternity cases. In support he cites case law holding that laches does not apply in child support cases. *See Trent v. Trent,* 829 N.E.2d 81, 87 (Ind.Ct.App.2005) (holding laches does not apply to child support proceedings because we will not penalize a child for his or her parent's delay in pursuing child support). From there he extrapolates that, because paternity cases involve an element of child support, laches also does not apply in paternity cases.

This court considered the defense of laches in a similar paternity case, *In re Paternity of K.H.,* 709 N.E.2d 1033 (Ind. Ct.App.1999). There the child was born in 1992 in Japan to an unmarried mother. Mother listed the putative father's name on the Consular Report of Birth Abroad and the Department of the Navy Birth Certificate. She also admitted in a 1993 letter that the putative father was the child's biological father.[5] The putative father "from time to time contributed unspecified amounts of money, clothing, and toys" to the child. *Id.* at 1034. In 1996, Mother was murdered in California. An aunt petitioned for guardianship of the child, and then in 1997 putative father petitioned to establish paternity. The aunt argued in relevant part that the puta-

---

**5.** The opinion does not state to whom the letter regarding the child's paternity was ad-

dressed.

tive father's petition was barred by laches. Considering that argument on the merits, this court held that the aunt had not demonstrated all three elements of laches. *Id.* at 1036. Specifically, the court concluded that the aunt had not shown prejudice because the "only prejudice which [she mentioned] in her brief [was] the disturbance in [the child's] life that will result from paternity being established in [the putative father]." *Id.* The court's analysis and holding in *In re K.H.* tend to show that laches may bar a paternity action if the party asserting the defense establishes all of its elements.

To the extent Putative Father argues that laches may not bar a paternity action because such an action would include a child support order, again, we must disagree. That child support was not addressed in *In re K.H.* is of no moment. A paternity action is not necessarily a child support proceeding. Further, the reasoning behind the prohibition against laches as a defense in child support cases, that support is the entitlement of the child, does not apply here in that there is no statutory or other "entitlement" to a paternity determination. Moreover, the child in this case has been supported by a mother and father throughout his life. The party seeking to establish paternity here is a potential obligor, not the person who would receive support for the benefit of the child. Thus, the reasoning in *Trent* and similar cases is inapplicable here. Absent relevant Indiana law holding that laches does not apply in paternity cases, we decline to take that leap.

## II. *Designated Evidence*

■ We next turn to the designated evidence to determine whether there is no genuine issue of material fact and whether Mother is entitled to judgment as a matter of law. Putative Father argues that the designated evidence does not support the trial court's findings or conclusions regarding laches. Putative Father argues that Mother "could not have met her burden at the Trial Court, because no evidence was presented at the Trial Court." Appellant's Brief at 8.

■ As previously mentioned, laches requires: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *SMDfund, Inc.,* 831 N.E.2d at 729. "[L]aches does not turn on time alone." *Id.* at 731. A mere lapse in time is insufficient; unreasonable delay which causes prejudice or injury is necessary. *Id.* "The required prejudice may be created 'if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party, [and] laches may bar the claim.'" *Id.* (quoting *State ex rel. Atty. Gen. v. Lake Superior Court,* 820 N.E.2d 1240, 1256 (Ind.2005), *reh'g denied, cert. denied,* 546 U.S. 927, 126 S.Ct. 398, 163 L.Ed.2d 276 (2005)). "The issue of laches is viewed as a question of fact to be resolved by the trial court in the exercise of its sound discretion from the facts and circumstances of each case." *Ebersol v. Mishler,* 775 N.E.2d 373, 378 (Ind.Ct.App. 2002), *trans. denied.* Further, with regard to paternity actions, disturbance in the child's life that will result from a paternity action is insufficient to establish prejudice.

In her motion to dismiss, Mother designated two exhibits: her affidavit and R.M.'s birth certificate. Mother's Affidavit stated:

3. In March of 1996, shortly after I learned that I was pregnant with [R.M.], I informed both [Presumptive Father] and [Putative Father] about the pregnancy and told each of them that they

might be the unborn child's biological father.

4. Prior to [R.M.'s] birth, [Putative Father] told me that he was not ready to be a father and that he believed the baby should be raised in a two parent home. He told me, "I'm walking away."

5. On June 29, 1996, I married [Presumptive Father] and I was married to him when [R.M.] was born on November 5, 1996.

6. When I informed [Presumptive Father] that I was pregnant he told me that he didn't care if he might not be her [sic] unborn child's biological father and that he would happily raise the child as his own.

\* \* \* \* \* \*

9. In the subsequent years, I provided photos of [R.M.] to [Putative Father].

10. After [Putative Father] saw [R.M.] at age 9 months, he sought no contact with [R.M.] and made no financial contribution to his support until after the death of [Presumptive Father] in 2006.

11. I am not aware of any action taken by [Putative Father] to register with Indiana's Putative Fathers Registry.

12. During my marriage to [Presumptive Father], a daughter . . . was born to us in 1998.

13. [R.M.] had a close, loving relationship with [Presumptive Father].

14. [Presumptive Father] provided all of [the] financial support for [R.M.] after my son's birth and until [Presumptive Father's] death from bronchial asthma on February 26, 2006.

15. After [Presumptive Father's] death, [R.M.] and I each began to receive of [sic] Social Security benefits of nearly $1200.00 per month which we continue to receive.

16. After [Presumptive Father's] death in 2006, [Putative Father] invited us over for a lunch date. During the lunch date swab samples for a home paternity DNA test were taken but I do not know what [Putative Father] did with them.

17. [Putative Father's] visits with [R.M.] since the summer of 2006 have been inconsistent.

18. [Putative Father] has contributed to [R.M.'s] extra-curricular activity expenses since the summer of 2006 but he has not paid regular child support until ordered to do so by the Court on December 1, 2008.

Appellee's Appendix at 13–14.

With regard to the third requirement for a finding of laches (a change in circumstances causing prejudice to the adverse party), the trial court found as follows:

[Putative Father] is now asking the Court to insert himself over [Presumptive Father] as [R.M.'s] father, take away [R.M.'s] death benefits, subject [R.M.] to lengthy and protracted court proceedings (as it is [Putative Father's] stated intent to ask the court for a change in custody), and destroy in this young man's mind the belief that the man he called "father" for the first ten years of his life was, in fact, his father. Waiting for twelve years to assert a right of which [Putative Father] was aware and waiting for over two years after a potential change in circumstances effectively bars [Putative Father] from initiating an action to overcome the presumption of paternity in favor of [Presumptive Father].

Appellant's Appendix at 11.

To the extent that the trial court found that Putative Father was asking to insert himself over Presumptive Father and "take away [R.M.'s] death benefits," *id.*, the designated evidence does not reveal that R.M. would lose Presumptive Father's Social Security benefit or, even if so, that

Putative Father would be unable to pay child support if ordered or would be ordered to pay an amount less than the amount R.M. receives from Presumptive Father's Social Security benefit.[6] We also observe that the court's finding that Putative Father intended to ask the court for a change of custody was not supported by any designated evidence. Regarding the court's finding that Putative Father was asking the court to "destroy in this young man's mind the belief that the man he called 'father' for the first ten years of his life was, in fact, his father," *id.*, we observe that the designated evidence does not reveal R.M.'s beliefs regarding Putative Father or Presumptive Father other than the fact that R.M. "had a close, loving relationship" with Presumptive Father. Appellee's Appendix at 14. Construing all facts and reasonable inferences drawn from those facts in favor of the nonmovant, and mindful that we must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court, we conclude that an issue of fact exists as to whether Putative Father's delay prejudiced Mother or R.M. In this case, prejudice to R.M. is the primary concern and that determination involves a fact-sensitive consideration of the child's best interests, including factors beyond finances and family stability. Summary judgment is rarely appropriate in a determination such as this and the evidence

before the court in this case was insufficient for its grant.[7] *See Habig v. Bruning*, 613 N.E.2d 61, 65 (Ind.Ct.App.1993) (holding that there were several issues of fact including whether the delay resulted in prejudice and concluding that the trial court erred by granting summary judgment on the issue of laches), *trans. denied*; *Woods v. Harris*, 600 N.E.2d 163, 164–165 (Ind.Ct.App.1992) (holding that whether the prejudice existed was an unresolved question of fact precluding summary judgment).

For the foregoing reasons, we reverse the trial court's grant of Mother's motion for summary judgment and remand for proceedings consistent with this opinion.

Reversed and remanded.

VAIDIK, J., concurs.

NAJAM, J., dissents with separate opinion.

NAJAM, Judge, dissenting.

I must respectfully dissent. The majority holds that the designated evidence is insufficient to support the trial court's findings on the issue of prejudice. On that basis, the majority determines that reversal is required. But, as the majority acknowledges, in reviewing a summary judgment, we are not bound by the trial court's specific findings and conclusions. *Rice v.*

6. Mother argues that she "believes if Putative Father is adjudicated the father of [R.M.], [R.M.] would be required to pay back the federal government all of the funds he has received, which at the time of the hearing in December 2009 was over $50,000." Appellee's Brief at 16–17. Mother also argues that "[h]ad Putative Father raised his paternity claim in a timely manner, [R.M.] would not have received these funds and would not be subject to paying back monies that have already been spent." *Id.* at 17. Mother does not cite to the record or to authority for her arguments. Our review of the designated evi-

dence reveals no evidence on this point. Further, we cannot say that such an argument demonstrates prejudice to Mother or R.M. given that the designated evidence does not reveal Putative Father's financial situation.

7. Because we reverse the trial court's grant of Mother's motion for summary judgment, we need not address Putative Father's argument that the trial court's dismissal of the paternity action violates public policy, and that the trial court violated his due process rights by failing to hold an evidentiary hearing.

*Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* Thus, rather than relying on the trial court's findings and conclusions, we must base our decision upon the materials properly presented to the trial court under Trial Rule 56(C). *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.,* 751 N.E.2d 702, 709 (Ind.Ct.App.2001). In fact, we may "sustain a grant of summary judgment if it is sustainable on any legal basis supported by the record." *Landmark Health Care Assocs. L.P. v. Bradbury,* 671 N.E.2d 113, 115 n. 2 (Ind.1996) (citation omitted).

The issue on summary judgment was the application of laches to this paternity action. The majority holds that there is a genuine issue of material fact as to Mother's establishment of one element of laches, namely, prejudice arising from Putative Father's unreasonable delay in seeking to establish paternity.[8] Specifically, the majority holds that an issue of fact exists as to whether Putative Father's delay prejudiced Mother or the child.

It is significant that Putative Father designated no evidence to the trial court. He did not contradict Mother's evidence that he had exercised "inconsistent" visitation with the child since 2006, that the child had a "loving relationship" with Presumptive Father until the father's untimely death, and that the child's current family unit consists of Mother and the child's sister (who is also the child of the Presumptive Father). Appellee's App. at 14. Mother's designated evidence is uncontro-

verted and shows that the child lived with Presumptive Father for a decade without interacting with Putative Father, at Putative Father's request. The establishment of paternity in Putative Father, following ten years during which Putative Father had no contact with and showed no apparent interest in the child, would necessarily involve a change in this child's family life that would permanently alter his family unit. In other words, the only reasonable inference from the designated evidence is that the establishment of paternity would destroy Presumptive Father's standing as the only father the child has ever known and interrupt the child's well-established relationship with his current family, his mother and sister. *See C.L. v. Y.B. (In re D.L.),* 938 N.E.2d 1221, 1225 (Ind.Ct.App. 2010) (holding that the establishment of paternity in one man necessarily results in the disestablishment of paternity in another), *not yet certified.*

We have held that an interruption in the stability of the child's family is, in itself, insufficient as a matter of law to establish prejudice. *Nash v. Howell (In re K.H.),* 709 N.E.2d 1033, 1036 (Ind.Ct.App.1999). But Mother's designated evidence also shows that the establishment of paternity in Putative Father would negatively impact the support received by the child. The Social Security Death Benefits paid to the child pursuant to the death of Presumptive Father would not continue intact after paternity has been established and a support order has been entered against Putative Father. These benefits are the child's primary source of support.[9] The

---

8. The majority appears to treat prejudice and the best interest of the child standard as opposite sides of the same coin. The two are related to an extent, but the majority takes the relationship to the extreme. If, as the majority holds, Mother failed to show prejudice, that does not necessarily mean that it would be in

the child's best interests to deny laches and establish paternity.

9. In her motion to dismiss, Mother reminded the court that she was in bankruptcy and that the court had entered a temporary order for Putative Father to pay $50 in weekly child support. Thus, she stated, the child's "pri-

only reasonable inference from the designated evidence is that the establishment of paternity in Putative Father would disestablish paternity in Presumptive Father and would, thus, terminate the child's future Social Security Death Benefits, which is a substantial economic consideration.

The majority observes that there is a lack of any designated evidence to show that Putative Father would be unable to pay child support if ordered or would be ordered to pay an amount less than the Social Security Death Benefits that the child currently receives. This is correct as far as it goes. But once Mother made her prima facie showing of economic harm, it was Putative Father's burden to designate evidence to the contrary and show the existence of a genuine issue of material fact so as to preclude the entry of summary judgment. Without any evidence showing Putative Father's income or financial circumstances, Putative Father has failed to show a genuine issue of material fact on the question of whether the child's support level would be adversely affected by the establishment of paternity and the entry of a support order against Putative Father.[10]

Again, Mother's designated evidence established a prima facie case for the entry of summary judgment. See Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269–70 (Ind.2009). The facts revealed by Mother's affidavit demonstrate

that Putative Father's 1996 decision to forego the responsibilities of paternity was tantamount to a waiver of those rights and that his subsequent 2008 decision to seek paternity, reversing his 1996 decision, was inexcusably delayed. Mother's affidavit also demonstrates that allowing Putative Father at this late date to reverse his now fourteen-year-old decision would prejudice the child. Generally, Indiana law does not allow a putative father to wait longer than two years after the child's birth before filing a petition to establish paternity. Ind.Code § 31–14–5–3(b).[11] Here, however, Putative Father permitted the child to spend the first ten years of his life believing Presumptive Father to be his biological father, and, at least until 2006, Putative Father made no attempts whatsoever to involve himself in the life of the child. Ten years is a long time for a child. Cf. In re Marriage of Moser, 469 N.E.2d 762, 767 (Ind.Ct.App.1984) (holding that six years between the child's birth and the filing of the petition to establish paternity was "a substantial lapse of time," but, because there was no dispute that the putative father had always also played the role of the child's father, Mother could not demonstrate a prejudicial change of circumstances to establish her claim of laches). Further, Mother has demonstrated that establishing paternity in Putative Father would not only disrupt the stability of the child's family unit but also prejudice the child by interfering with his receipt of

mary support" was from the Social Security Death Benefits. Appellant's App. at 5.

10. Putative Father designated no evidence to the trial court to demonstrate the existence of an issue of material fact on any of the elements of laches. In fact, before the trial court he did not address the elements of laches but argued instead that a question of fact may only be determined after an evidentiary hearing. Putative Father is incorrect in that blanket assertion and misstates the nature of a motion for summary judgment. Again,

summary judgment shall be entered if the designated evidence shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.

11. Putative Father relies on Indiana Code Section 31–14–5–2, which permits a child's next friend to file a petition on the child's behalf until the child reaches the age of twenty.

child support through the Social Security Death Benefits. Either or both results would constitute a significant change in circumstances for the child.

Parental rights are not immutable. For example, consent for an adoption need not be obtained from a parent who has abandoned the child. *See* Ind.Code § 31–19–9–8(a)(2). And there is no absolute right to establish parental rights. Thus, a putative father may be barred from establishing paternity where he has failed to assert those rights for an unreasonable length of time and, without good cause, allowed another man to give his name to and raise the child, and that inexcusable delay has prejudiced the child.

Both society and government are concerned that a man accept responsibility and be held accountable for his paternity. But a man who knows or has good reason to believe that he is the father of a child should not be allowed to stand by and wait for an indefinite period to claim his paternity until it is convenient for him. This is not a case where a man learned many years after the fact that he is the father of a child, nor is this a case involving the mere passage of time. Here, Putative Father has wholly failed to designate any evidence that might justify his extraordinary delay or otherwise place at issue any element of Mother's claim of laches.

Thus, the majority's reliance on insufficient evidence as grounds for reversal is misplaced.[12] We may sustain a grant of summary judgment on any legal basis supported by the designated evidence. *See Ferrell,* 751 N.E.2d at 709; *Rice,* 670 N.E.2d at 1283. The question in a summary judgment is whether the designated evidence discloses a genuine issue of material fact. Mother's designated evidence supports the trial court's entry of summary judgment because Mother has made a prima facie showing of all three elements required to prove laches. Putative Father designated no evidence to challenge Mother's designations and, therefore, he has not met his burden of showing the existence of a genuine issue of material fact.

A trial court exercises its sound discretion when acting on an equitable defense such as laches. *In re K.H.,* 709 N.E.2d at 1036. Putative Father has not shown that the trial court abused its discretion when it granted Mother's motion to dismiss considering Putative Father's failure to designate any evidence, Mother's designated evidence, and the reasonable inferences from that evidence. The designated evidence supports the trial court's conclusion that Putative Father's petition is barred by laches. I would, therefore, affirm the trial court's dismissal of Putative Father's petition.

---

12. The cases cited by the majority, *Habig v. Bruning,* 613 N.E.2d 61 (Ind.Ct.App.1993), *trans. denied,* and *Woods v. Harris,* 600 N.E.2d 163 (Ind.Ct.App.1992), do not support the contention that the designated evidence in this case is insufficient to support the grant of summary judgment. Neither *Habig* nor *Woods* considered whether, as in this case, a movant who has made a prima facie showing for summary judgment can be defeated where the nonmovant has designated no evidence.