

FILED

Jan 31 2018, 11:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kristin T. Morrison
Joann Jacob Krantz
Fine & Hatfield, P.C.
Evansville, Indiana

ATTORNEY FOR APPELLEE

Jason M. Spindler
Princeton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Paternity of I.I.P.:

Kailei L. Poteet,

*Appellant-Petitioner,*

v.

Justin Rodgers and Nathan T. Poteet,

*Appellees-Respondents.*

January 31, 2018

Court of Appeals Case No.
63A01-1706-JP-1265

Appeal from the Pike Circuit Court

The Honorable Jeffrey L. Biesterveld, Judge

Trial Court Cause No.
63C01-0701-JP-12

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Petitioner, Kailei L. Poteet (Mother), appeals the trial court's dismissal of her petition to establish paternity of her minor child.

We reverse and remand.

## ISSUE

Mother raises three issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred by dismissing Mother's petition to establish paternity.

## FACTS AND PROCEDURAL HISTORY

On November 21, 2012, Mother gave birth to I.I.P. (the Child). Near the time of the Child's conception, Mother was in a relationship with Appellee-Intervening Respondent, Nathan T. Poteet (Legal Father). Around that same time, Mother also had an intimate relationship with Appellee-Respondent, Justin A. Rodgers (Biological Father), and ended her relationship with Legal Father. When the Child was approximately four months old, Mother and Legal Father resumed their relationship and eventually began cohabiting. On September 13, 2014, they married. Legal Father established a bond with the Child and provided care for her. On January 13, 2015, Legal Father executed a paternity affidavit to establish his paternity of the two-year-old Child. Mother also signed the paternity affidavit identifying Legal Father as the Child's father. During the parties' marriage, Mother gave birth to another child. Shortly after their first anniversary, on November 30, 2015, Legal Father filed a petition in the Pike County Circuit Court to dissolve his marriage to Mother.

On March 15, 2016, the trial court issued a provisional order regarding certain aspects of the parties' dissolution. In particular, the trial court found "that the

paternity affidavit signed by both parties on January 13, 2015[,] regarding [the Child] is valid and was not signed by [Mother] under fraud, duress, or mistake of fact and therefore [Legal Father] is the father of [the Child] with all attendant rights and responsibilities." (Appellant's App. Vol. II, p. 17). Accordingly, the trial court granted Legal Father the right to exercise parenting time with the Child during the pendency of the divorce.

[6]    On September 9, 2016, Mother—who had rekindled her relationship with Biological Father—filed a Verified Petition to Establish Paternity,[1] identifying Biological Father as the Child's biological father. Mother also filed a motion for genetic testing and moved to join Legal Father as a party to the paternity action. On October 14, 2016, Legal Father filed a motion to intervene in the paternity proceedings, identifying himself as the Child's father based on a validly executed paternity affidavit. Legal Father simultaneously moved to dismiss the paternity action, contending that there was no basis to rescind the paternity affidavit, that *res judicata* barred re-litigating the issue of paternity, and that the time for contesting paternity had passed. On October 19, 2016, Mother submitted the results of a DNA analysis, which established, with a 99.99% probability, that Biological Father is the Child's biological parent. That day, the trial court joined Legal Father as an intervening respondent in the paternity action.

---

[1] Mother originally filed the paternity action in Gibson County. Eventually, the Gibson County trial court transferred the paternity action to Pike County, where the dissolution action was pending.

[7] On February 14, 2017, Legal Father filed a Motion to Dismiss Petition to Establish Paternity, alleging that the petition to establish paternity fails to state a claim upon which relief can be granted; is time-barred by the applicable statute of limitations; is barred by laches, estoppel, and *res judicata*; and is contrary to the Child's best interests. Legal Father further contended that Mother frivolously filed the paternity action as an apparent "means to obtain leverage in the dissolution action." (Appellant's App. Vol. II, p. 57). Accordingly, Legal Father requested an award of attorney fees for having to defend his paternity. On February 16, 2017, Biological Father filed a motion to establish his paternity and simultaneously disestablish Legal Father's paternity.

[8] On March 14, 2017, the trial court conducted a paternity hearing. On May 9, 2017, the trial court issued Findings, Conclusions and Judgment, in which it granted Legal Father's motion to dismiss Mother's petition to establish paternity. The trial court determined that Legal Father had executed a paternity affidavit, and no party timely challenged his paternity or otherwise alleged fraud, duress, or material mistake of fact in the execution of the affidavit. The trial court further concluded that, by signing the paternity affidavit, Mother was estopped from attempting to establish paternity in another man. In addition, the trial court noted that Biological Father never filed a petition to establish paternity to be declared the Child's father and that the time for doing so has expired. Finally, the trial court determined that nobody filed "a petition as next friend on behalf of the [C]hild to establish paternity in [Biological Father]." (Appellant's App. Vol. II, p. 14).

Mother and Biological Father now appeal.[2]  Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I.  *Standard of Review*

In this case, Legal Father filed a motion to dismiss Mother's petition to establish paternity, which the trial court granted.  However, because the trial court held an evidentiary hearing prior to ruling, the motion must be treated as one for summary judgment under Indiana Trial Rule 56.  *See Drake v. McKinney*, 717 N.E.2d 1229, 1230-31 (Ind. Ct. App. 1999).  Upon review of a grant of summary judgment, we employ the same standard utilized by the trial court.  *In re Paternity of R.M.*, 939 N.E.2d 1114, 1118 (Ind. Ct. App. 2010).  We must carefully consider a summary judgment ruling "to ensure that a party was not improperly denied its day in court."  *Id.*  Review is limited to the evidentiary materials designated to the trial court.  *Id.*  Based on the designated facts, "we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law."  *Id.*  We

---

[2]  Although Biological Father has appeared as an appellee and filed a brief, his position is entirely consistent with Mother's argument regarding the trial court's dismissal of the paternity position; thus, he is more akin to a *de facto* appellant and will be treated as such.  In fact, following the dismissal of the paternity petition, Biological Father filed a motion to correct error, which was deemed denied.  From there, Biological Father initiated a separate appeal.  At Biological Father's request, we have issued an order to consolidate his appeal with Mother's as the issues are the same.  Legal Father, on the other hand, has not filed an appellate brief.  When an appellee does not file a brief, our court will not undertake the burden of developing arguments on that party's behalf.  *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002).  Rather, we apply "a less stringent standard of review" and may reverse the trial court if the appellant establishes *prima facie* error.  *Id.* *Prima facie* "means at first sight, or on first appearance, or on the face of it."  *Id.*

construe all factual inference in favor of the non-moving party "and resolve all doubts as to the existence of a material issue against the moving party." *Id.* The moving party bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law, at which point, the burden shifts to the non-moving party to produce evidence demonstrating the existence of a genuine issue of material fact. *Id.* Upon Mother's request, the trial court issued special findings of fact and conclusions thereon. While neither required nor binding on appeal, special findings and conclusions "offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review." *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 608 (Ind. Ct. App. 2008), *trans. denied*.

## II. *Establishing and Disestablishing Paternity*

[11]  The Indiana General Assembly has specifically stated that it "favors the public policy of establishing paternity under [Indiana Code article 31-14] of a child born out of wedlock." Ind. Code § 31-14-1-1. The ultimate goal of allowing paternity suits "is to promote the welfare of the child." *Drake*, 717 N.E.2d at 1231. In this case, Mother claims that the trial court erroneously dismissed her petition to establish Biological Father's paternity of the Child. Under our summary judgment standard of review, we must determine whether Legal Father, as the moving party, established that there are no genuine issues of material fact and that Mother was precluded from challenging his paternity as a matter of law.

[12] The resolution of this matter hinges on an interpretation of Indiana's paternity statutes. Statutory interpretation is a question of law reserved for the courts. *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 868 (Ind. Ct. App. 2007). Thus, we independently review a statute's meaning and apply it to the facts of the case. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind. 2001). Where a statute is unambiguous, we "must give the statute its clear and plain meaning." *Id.* Conversely, for an ambiguous statute—*i.e.*, a statute that is susceptible to more than one interpretation—"we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent." *Id.*

[13] A man's paternity may only be established by either filing a paternity action under Indiana Code article 31-14 or by executing a paternity affidavit. I.C. § 31-14-2-1. A paternity affidavit executed in accordance with Indiana Code section 16-37-2-2.1 "conclusively establishes the man as the legal father of a child without any further proceedings by a court." I.C. § 31-14-2-2.1(p). "A man is a child's legal father if the man executed a paternity affidavit . . . and the paternity affidavit has not been rescinded or set aside under [Indiana Code section] 16-37-2-2.1." I.C. § 31-14-7-3. There are two statutory mechanisms for rescission of a paternity affidavit. First, the man who signs the paternity affidavit has sixty days after executing the paternity affidavit to request a genetic test through the court, and if he is excluded as the biological father, the trial court may set the paternity affidavit aside. I.C. § 16-37-2-2.1(k),(n). Second, if more than sixty days have passed since the execution of the paternity affidavit, it may only be rescinded if a court:

(1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
(2) at the request of [the man who signed the paternity affidavit], has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

I.C. § 16-37-2-2.1(l).

[14]  In this case, there is no dispute that Legal Father established paternity by executing a paternity affidavit. More than sixty days have lapsed since Legal Father executed the paternity affidavit on January 13, 2015. Furthermore, Legal Father never requested a genetic test; rather, Mother sought the DNA testing that excluded Legal Father as the biological parent. Moreover, the trial court determined during the dissolution proceedings that there was no fraud, duress, or material mistake of fact in the execution of the paternity affidavit. Thus, it appears that there is no statutory basis for rescinding the paternity affidavit.[3]

[15]  Our courts have held that it is contrary to public policy to simply disestablish paternity, whereby a child would be declared fatherless. *In re Paternity of Infant*

---

[3] Biological Father insists that, contrary to the trial court's finding that no party had "alleged fraud, duress or material mistake of fact with respect to the execution of the Paternity Affidavit," he did argue that Legal Father's assertion that he was the Child's father was fraudulent based on Mother's testimony during the paternity hearing that she had not engaged in sexual relations with Legal Father for "well over a year before" the Child's birth. (Appellant's App. Vol. II, p. 12; Tr. p. 32). We first note that there was conflicting evidence at the hearing as Legal Father testified that he was, in fact, involved with Mother at the time of the Child's conception, creating a genuine issue of material fact. Regardless, based on the plain language of the statute, the trial court was required to make a finding of fraud, duress, or mistake of fact *and*, at *Legal Father's request*, order a genetic test. I.C. §13-37-2-2.1(l). Legal Father made no such request here; thus, we elect not to rely on this statute as a basis for setting aside the paternity affidavit.

*T*, 991 N.E.2d 596, 600 (Ind. Ct. App. 2013), *trans. denied*. Nevertheless, it is well established that paternity may be "indirectly disestablish[ed] once it has been established in another man." *Id.* (internal quotation marks omitted); *see also See In re Paternity of D.L.*, 938 N.E.2d 1221, 1225 (Ind. Ct. App. 2010) (discussing that establishing paternity in another man effectively operates to disestablish the paternity of a man who executed a paternity affidavit). Here, Mother and Biological Father seek to have Biological Father's paternity established.

[16] Pursuant to Indiana Code section 31-14-4-1, a paternity action may be filed by, in relevant part, the mother; a man alleging to be the child's biological father; the mother and alleged father, jointly; or the child. Yet, there are certain statutory limitations for filing a paternity action. A child is permitted to file a paternity petition "at any time before the child reaches twenty (20) years of age," and a child who is incompetent—*i.e.*, based on age—"may file a petition through the person's guardian, guardian ad litem, or next friend." I.C. § 31-14-5-2(a)-(b). On the other hand, the mother or a man alleging to be the child's father

> must file a paternity action not later than two (2) years after the child is born, unless:
> (1) both the mother and the alleged father waive the limitation on actions and file jointly;
> (2) support has been furnished by the alleged father or by a person acting on his behalf, either voluntarily or under an agreement with:
>     (A) the mother;
>     (B) a person acting on the mother's behalf; or

(C) a person acting on the child's behalf;
(3) the mother . . . files a petition after the alleged father has acknowledged in writing that he is the child's biological father;
(4) the alleged father files a petition after the mother has acknowledged in writing that he is the child's biological father;
(5) the petitioner was incompetent at the time the child was born; or
(6) a responding party cannot be served with summons during the two (2) year period.

I.C. § 31-14-5-3(b). If one of these exceptions is met, "the paternity petition must be filed not later than two (2) years after the condition described . . . ceases to exist." I.C. § 31-14-5-3(c).

[17] Mother now contends that the paternity petition was timely filed because she filed it as the Child's next friend, and even though the petition did not explicitly contain those words, the trial court should have recognized it as such or granted her leave to amend the petition accordingly. Biological Father additionally argues that the trial court disregarded the four applicable exceptions that permitted either him or Mother to file the paternity action more than two years after the Child's birth. First, Biological Father asserts that even though he and Mother did not technically file a joint petition to establish his paternity to the Child, "it was made abundantly clear through both the [divorce and paternity] proceedings that [Biological Father] and [Mother] are of the same position, namely that [Biological Father] should be adjudicated the father of [the Child]." (Biological Father's Br. p. 8). Similar to Mother, Biological Father contends that he and Mother should have been afforded an opportunity to file an amended joint petition. Second, Biological Father further argues that evidence

was presented to the trial court establishing that he furnished support for the Child. Third, Biological Father contends that it is a mere technicality that could be fixed with an amended pleading that he did not acknowledge his status as biological father in writing prior to Mother filing the paternity petition. Fourth, now that Mother has acknowledged in writing that he is the biological father, Biological Father points out that he could file a paternity petition without violating the statute of limitations.[4]

[18] While we feel compelled to express our exasperation over the instability and confusion that the irregularity of these proceedings has undoubtedly caused the now five-year-old Child—who developed a bond with Legal Father only to be subsequently introduced to a new father figure and inevitably distanced from Legal Father—we nevertheless agree with Mother and Biological Father that Legal Father is not entitled to judgment as a matter of law on Mother's petition to establish paternity. Biological Father and Mother could have effectively disestablished Legal Father's paternity/established Biological Father's paternity if Mother's paternity petition had strictly complied with Indiana Code section 31-14-5-2(a)-(b) or Indiana Code section 31-14-5-3(b)(1), (3), or (4). The trial court ignored Mother's request to amend her paternity petition. Regardless, at the very least, there is a material question of fact as to whether Biological

---

[4] It actually appears from the Chronological Case Summary that, on February 16, 2017, Biological Father filed a Motion and Brief Regarding Establishing Paternity in [Biological Father] and Disestablishing Paternity in [Legal Father]. This motion was not included in the record, and it is unclear why it was not treated as a petition to establish paternity pursuant to Indiana Code sections 31-14-4-1 and 31-14-5-3(b)(2),(4).

Father provided support for the Child. Biological Father testified that he had been living with Mother and the Child for eight months preceding the paternity hearing, during which time he provided financial support for the Child's care. The provision of support would permit Biological Father or Mother to file a paternity petition more than two years after the Child's birth, thereby establishing paternity in Biological Father and disestablishing the same in Legal Father. *See* I.C. § 31-14-5-3(b)(2),(c); *Drake*, 717 N.E.2d at 1232 (precluding summary judgment where genuine issue of material fact as to whether biological father contributed to the child's support). We find that further proceedings are warranted in this case.[5]

# CONCLUSION

[19] Based on the foregoing, we conclude that Legal Father was not entitled to judgment as a matter of law on Mother's petition to establish paternity.

[20] Reversed and remanded.

---

[5] The dissent cites *In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008), for support that Mother may not use the paternity statutes to deprive Legal Father or his rights because she executed the paternity affidavit. However, that case is factually distinct from the present situation. In *In re Paternity of H.H.*, the trial court rescinded a paternity affidavit on grounds of fraud because both parties signed it despite knowing that the alleged father was not the biological father. *Id.* at 1176. We reversed the trial court, noting that "the legislature intended to provide assistance to a man who signed a paternity affidavit due to 'fraud, duress, or material mistakes of fact'"—not to women who "always [have] the information necessary to question paternity prior to signing the affidavit." *Id.* at 1178. In the case at hand, Mother is not seeking to set aside the paternity affidavit on grounds of fraud. Furthermore, the mother in *In re Paternity of H.H.* sought to disestablish the father's paternity, not because she had identified the actual biological father, but as a means of contesting his petition to establish custody, support, and parenting time. *Id.* at 1176. As already noted, we find it contrary to public policy to simply *disestablish* paternity and essentially declare a child to be fatherless. *See In re Paternity of Infant T*, 991 N.E.2d at 600. Here, however, Mother and Biological Father seek to establish Biological Father's paternity, which would indirectly disestablish Legal Father's paternity.

Brown, J. concurs

Baker, J. dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

In RE: The Paternity of I.I.P.;

Kailei L. Poteet

*Appellant-Petitioner,*

v.

Justin Rodgers and
Nathan T. Poteet,

*Appellees-Respondents.*

Court of Appeals Case No.
63A01-1706-JP-1265

**Baker, Judge, dissenting.**

[23] I respectfully dissent. The plain language of Indiana Code section 16-37-2-2.1(l) provides that where, as here, a paternity affidavit has already been executed pursuant to that section, it may not be rescinded unless the trial court:

> (1) has determined that fraud, duress, or material mistake of
> fact existed in the execution of the paternity affidavit; and

(2)     at the request of a man described in subsection (k), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

Neither of those circumstances has occurred in this case.

[24]     The majority cites Indiana Code section 31-14-5-3 as support for its conclusion. In my view, this statute applies only if a paternity affidavit has not already been executed pursuant to Indiana Code section 16-37-2-2.1. To say that judicial action can trump a valid paternity affidavit even if the parties have not complied with Indiana Code section 16-37-2-2.1 is to render that statute meaningless, which is a result that should be avoided.

[25]     Moreover, the majority points to *In re Paternity of D.L.*, 938 N.E.2d 1221, 1225 (Ind. Ct. App. 2010), in support of its conclusion that "establishing paternity in another man effectively operates to disestablish the paternity of a man who executed a paternity affidavit." Slip op. para. 14. In *D.L.*, however, paternity was *not* first established by a paternity affidavit under Indiana Code section 16-37-2-2.1; instead, it "was established by an action commenced pursuant to Article 31-14 . . . ." 938 N.E.2d at 1225. That paternity established by Article 31-14 can be disestablished by the same set of statutes is both unsurprising and irrelevant to the case before us.

[26]     Both the plain language of Indiana Code section 16-37-2-2.1 and caselaw support a conclusion that once a paternity affidavit has been executed, it may not be rescinded unless the terms of that statute are met. *See, e.g.*, *In re Paternity*

*of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (holding that "[o]nce a man executes a paternity affidavit in accordance with I.C. § 16-37-2-2.1, he 'is a child's legal father' unless the affidavit is rescinded or set aside pursuant to that same statute" and that "once a mother has signed a paternity affidavit, she may not use the paternity statutes to deprive the legal father of his rights, even if he is not the biological father"). I acknowledge that there is also caselaw supporting the opposite conclusion, but respectfully disagree with those cases given the plain language of the relevant statutes. *See Davis v. Trensey*, 862 N.E.2d 308, 312-14 (Ind. Ct. App. 2007) (holding that prosecutor had a right to file paternity action and seek a genetic test where paternity had been established in another man by affidavit in the past); *In re Paternity of N.R.R.L.*, 846 N.E.2d 1094, 1098 (Ind. Ct. App. 2006) (noting that while a man is established as legal father after executing a paternity affidavit, "that does not preclude another man from attempting to establish paternity of the child" via a paternity action).

[27] I believe that the plain language of Indiana Code section 16-37-2-2.1 compels us to affirm, and therefore respectfully dissent.