**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 12 2012, 9:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK ALLEN DUFF**
Duff Law, LLC
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**BETH ANN FOLZ**
McFadin Higgins & Folz, LLP
Mt. Vernon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF E.W. | ) | |
| | ) | |
| T.S., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 65A05-1201-JP-23 |
| | ) | |
| J.W. AND V.W. | ) | |
| | ) | |
| Appellees-Respondents. | ) | |
| | ) | |

APPEAL FROM THE POSEY CIRCUIT COURT
The Honorable James M. Redwine, Judge
Cause Nos. 65C01-0907-JP-145 & 65C01-1012-JP-228

**September 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

After paternity of E.W. was disestablished in Stepfather and established in Natural Father, Natural Father sought to change E.W.'s last name to match his own. Natural Father also sought attorney fees associated with the paternity action. The trial court denied Natural Father's requests, and he now appeals. Mother and Stepfather cross-appeal, arguing that the trial court erred when it did not make Natural Father's child-support obligation retroactive to the date of Natural Father's paternity filing. We conclude that the trial court did not err in denying Natural Father's request to change E.W.'s name because Natural Father failed to prove that such a change was in E.W.'s best interest. Nor did the trial court err when it refused Natural Father's request for attorney fees. Finally, because E.W. was already receiving support from Stepfather at the time, the trial court did not err in refusing to make Natural Father's support obligation retroactive to his paternity filing. We affirm.

**Facts and Procedural History**

In 2008, during a period of separation from J.W. ("Stepfather"), V.W. ("Mother") had sexual relationships with numerous men, including T.S. ("Natural Father"). Shortly after Mother and Natural Father began their relationship, Natural Father was convicted of dealing in methamphetamine and incarcerated. Mother reconciled with Stepfather and learned that she was pregnant. Mother was aware of the possibility that Natural Father, Stepfather, or a few other men could be the baby's father. Mother gave birth to E.W. in May 2009, and Mother and Stepfather were married in November 2010. Mother and Stepfather later had another child, A.W.

2

The Posey County Prosecutor's Office filed a paternity action shortly after E.W.'s birth. Although genetic testing showed a 0.000% probability that Stepfather was E.W.'s biological father, Mother and Stepfather nonetheless sought to establish paternity in Stepfather. The Prosecutor's Office filed an amended petition in support of their efforts. On November 30, 2010, the trial court entered an order establishing Stepfather's paternity and ordered the child's name to be changed to E.W.[1]

Natural Father was released from the Department of Correction in November 2010. One month later, he filed a petition to establish paternity of E.W. In a subsequent court appearance, Natural Father learned that paternity had been established in Stepfather, and he filed a motion to set aside the judgment. Genetic testing was ordered, and the tests results showed a 99.999% probability that Natural Father was E.W.'s biological father.

The trial court set a hearing on the matter for November 2011. At the hearing, Natural Father requested that E.W.'s last name be changed to match his own. Natural Father also sought attorney fees associated with the paternity action. Natural Father testified that he wanted E.W. to have his last name because "that is my only son" and because "a kid should have his father's last name." Tr. p. 155. Natural Father also testified that it "would be kind of weird" if Mother and Stepfather divorced and Mother later remarried, which would mean that E.W. no longer had his mother's last name. *Id.* at 156.

---

[1] The child's initials were formerly E.R., which reflected Mother's former last name.

Mother and Stepfather objected to the name change and explained their reasoning. Mother said that E.W. might feel "out of place" if his name was changed because he had siblings who had the same last name. *Id.* at 70. Mother explained that she "want[ed] [E.W.] to be able to feel like he is part of the family . . . ." *Id.* at 71. Mother also said that Natural Father's last name had a negative connotation in the community due to his criminal history. Stepfather testified that he opposed changing E.W.'s name because "his sister's last name is [W], his mother's last name is [W], the father, me, last name is [W]. We are all a family together at one household. I would like that to be a [W] household and I wouldn't like him to feel like an outcast." *Id.* at 97.

> At the close of the hearing, the trial court summarized the parties' behavior:
>
> Folks, I have been pretty impressed with your ability to get along as well as you have in this extremely difficult situation. It speaks both ways. I see a lot of cases, of course, and people don't always act like adults and you folks have acted like adults and you have acted like responsible parents. I am very impressed with that. I am particularly impressed with [Stepfather] and his attitude towards [E.W.] and [Natural Father] and this entire situation.

*Id.* at 398. The court then granted Natural Father's motion as to paternity, setting aside the paternity order as to Stepfather and establishing Natural Father as E.W.'s legal father. As to Natural Father's child-support obligation, the court explained that it did not believe Indiana Code section 31-14-11-5, which provides that that a child-support order must include the period dating from the filing of the paternity action, was intended to cover a situation like this one—where paternity had been established in one individual who provided for the child until paternity was disestablished and immediately established in another. *Id.* For this reason, the court did not order support retroactive to the date of

4

Natural Father's paternity filing, but instead ordered Natural Father to pay $50 in child support weekly, beginning the following Friday, December 30, 2011.

On the issue of changing E.W.'s name, the court denied Natural Father's request:

[W]e have the mother's name [W], sister's name [W], [E]'s name is [W]. It is on his birth certificate. I believe it is in his best interest and I am going to find that it is in his best interest that his name remain [W].

*Id.* at 404. The court also denied Natural Father's request for attorney fees, saying: "[I] don't see any reason to believe that either one of you has done anything to[o] egregious here, it is just a very complicated situation." *Id.* at 405.

Natural Father now appeals, and Mother and Stepfather cross-appeal.

**Discussion and Decision**

Natural Father raises two issues on appeal: (1) whether the trial court erred in refusing his request to change E.W.'s last name and (2) whether the trial court erred in denying his request for attorney fees. Mother and Stepfather cross-appeal, arguing that the trial court erred when it failed to order Natural Father to pay child support retroactive to the date of his paternity filing.

**I. Name Change**

We first address Natural Father's contention that the trial court abused its discretion when it denied his request to change E.W.'s last name.

We review a trial court's order to change the name of a minor child under an abuse of discretion standard. *Paternity of M.O.B.*, 627 N.E.2d 1317, 1318 (Ind. Ct. App. 1994) (citations omitted). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court or the court has

5

misinterpreted the law. *Id.* We do not reweigh the evidence, and we view the evidence in the light most favorable to the appellee. *Id.*

In determining whether a minor child's name should be changed, "the court is guided by the best interest of the child under Indiana Code section 31-17-2-8." I.C. § 34-28-2-4(d). Absent evidence that a name change would be in the child's best interest, the party seeking a name change is not entitled to such change. *M.O.B.*, 627 N.E.2d at 1318. The factors that a trial court may consider in this context include whether the child holds property under a given name, whether the child is known by public and private entities and community members by a certain name, and the degree of confusion that might be caused by a name change. *Id.* at 1318-19.

The evidence here shows that Natural Father failed to prove that the proposed name change was in E.W.'s best interest. Natural Father's only testimony as to his reasons for seeking the change was that "he would like" E.W. to have his last name because E.W. was "his only son" and because "a kid should have his father's last name." Tr. p. 155-56. Essentially, Natural Father presented evidence that it was in *his* best interest, rather than E.W.'s, that the child take his last name. *M.O.B.*, 627 N.E.2d at 1318; *Garrison v. Knauss*, 637 N.E.2d 160 (Ind. Ct. App. 1994); *see also Peterson v. Burton*, 871 N.E.2d 1025, 1030-31 (Ind. Ct. App. 2007) (distinguishing father's testimony from the testimony in *M.O.B.* and *Garrison* where father testified about how son would be positively impacted by taking his last name and would better understand his

connection to father).  The trial court did not err in denying Natural Father's request to change E.W.'s last name.[2]

## II. Attorney Fees

Natural Father also argues that the trial court erred in denying his request for attorney fees.  Indiana Code section 31-17-7-1(a) authorizes the award of attorney fees in this context.  Trial courts enjoy broad discretion in determining whether to award attorney fees, and we will reverse an award only where it is clearly against the logic and effect of the facts and circumstances before the court.  *In re Paternity of A.S.*, 948 N.E.2d 380, 389 (Ind. Ct. App. 2011).  When determining whether an award of attorney fees is appropriate, there are several factors that a trial court considers, such as the ability to pay and whether fees and litigation expenses were the result of the adverse party's misconduct.  *Id.*

Here, there is no evidence that either party was in a substantially superior financial position.  Nor are we inclined to adopt Natural Father's negative characterization of Mother and Stepfather's conduct in initially establishing paternity in Stepfather.  In declining to award attorney fees, the trial court praised both parties, particularly Stepfather, for their "adult" and "responsible" conduct and explained that it did not "see any reason to believe that either one of you has done anything to[o] egregious here, it is

---

[2] While Natural Father also testified that it "would be kind of weird" for E.W. if Mother and Stepfather divorced and Mother remarried and took her new husband's name, this was hypothetical testimony of no influence as Mother and Stepfather were still married at the time of the hearing.

just a very complicated situation." Tr. p. 389, 405. We cannot say that the trial court abused its discretion in denying Natural Father's request for attorney fees.[3]

### III. Child Support

Finally, we address Mother and Stepfather's contention that the trial court erred by failing to order child support retroactive to the date of Natural Father's paternity filing. Decisions regarding child support generally rest within the sound discretion of the trial court. *In re Paternity of D.L.*, 938 N.E.2d 1221, 1226 (Ind. Ct. App. 2010), *aff'd on reh'g*, 943 N.E.2d 1284 (Ind. Ct. App. 2011). We will reverse a trial court's decision in child-support matters only for an abuse of discretion or if the trial court's determination is contrary to law. *Id.*

Here, the trial court declined to order child support retroactive to the date of the paternity filing because, at that time, E.W. had a legally-recognized father who was providing support. As the trial court explained, this was not the typical initial paternity-establishment scenario contemplated by Indiana Code section 31-14-11-5, which provides that a child support order must include the period dating from the filing of the paternity action. *See* Ind. Code § 31-14-11-5. Because E.W. was already receiving support from Stepfather at the time Natural Father filed his paternity action, there was no need to order retroactive support. We conclude that the trial court did not err in ordering Natural Father's child-support obligation to begin one week from the establishment of his paternity.

---

[3] While we do not condone the parties' pursuit of the establishment of paternity, rather than adoption—which would have been the proper course of action in these circumstances—this did not alter Natural Father's legal actions or the resulting legal fees. That is, if paternity had not been established in Stepfather, Natural Father still would have been required to file a paternity action. He also would have been required to pursue a legal name change, as E.W.'s last name at birth was Mother's former last name.

Affirmed.

MATHIAS, J., and BARNES, J., concur.